## THE STATE v. PATTERSON, *Appellant*.

1. **Criminal Law** : CONSTITUTION : FORMER JEOPARDY. Where a defendant who has been convicted of a criminal offence asks and obtains a new trial, he may again be put on trial upon the same facts before charged against him, and the proceedings had on the first trial will constitute no protection on the second one.

2. **Criminal Practice** : DEFENDANT TESTIFYING, CROSS-EXAMINATION OF. A defendant testifying as a witness on a criminal trial should not be cross-examined by the state as to matters not testified to by him in chief.

3. ———— : SEDUCTION OF FEMALE UNDER PROMISE OF MARRIAGE : PRIOR ACTS OF UNCHASTITY OF PROSECUTRIX. On the trial of an indictment, under Revised Statutes, section 1259, for seducing a female

under promise of marriage, it is competent for the defendant to show that prior to the time of the alleged seduction, the prosecutrix was guilty of acts of lewdness and unchastity with other men than the defendant. (Overruling *The State v. Brassfield*, 81 Mo. 151).

*Appeal from Livingston Circuit Court.*—Hon. J. M. Davis, Judge.

Reversed.

*Broaddus & Wait* for appellant.

(1) The court erred in sustaining the state's demurrer to the plea of once in jeopardy. *Flagg v. People*, 40 Mich. 706 ; *Gordon's case*, 40 Mich. 716 ; *State v. Moon*, 41 Wis. 684 ; *State v. Moore*, 66 Mo. 372 ; *Shepherd v. People*, 25 N. Y. 406. (2) The court erred in permitting the state to cross-examine defendant as to his having fled to avoid arrest, it not being a matter testified to by him in chief. *State v. Porter*, 75 Mo. 171 ; *State v. Turner*, 76 Mo. 351 ; *State v. McGraw*, 74 Mo. 573 ; *State v. McLaughlin*, 76 Mo. 324 ; *State v. Douglass*, 81 Mo. 231. (3) The court erred in giving the state's first instruction. The prosecuting witness must surrender her chastity by reason of the promise of marriage, relying on that and nothing else. *People v. Clark*, 33 Mich. 112 ; *State v. Wilson*, 58 Ga. 9. (4) Mrs. Lee should not have been permitted to testify as to a promise of marriage made in October, 1881, which was seventeen months after the alleged seduction. (5) The court erred in refusing defendant's proof of prior acts of unchastity of Sarah Loe with other persons than the defendant. *People v. Bowen*, 26 Ohio St.

*B. G. Boone*, Attorney General, for the state.

(1) The plea of once in jeopardy was not well taken in this case. 1 Whar. Crim. Law (5 Ed.) sec. 591 ; *State*

*v. Hays*, 78 Mo. 605 ; Const. of Mo., art. 2, sec. 23 ; *State v. Blaisdell*, 59 N. H. 328 ; *State v. Sherburne*, 58 N. H. 535 ; *State v. Rust*, 31 Kan. 509. (2) Evidence of previous specific acts of unchastity on the part of the prosecutrix was inadmissible. R. S., sec. 1259 ; *State v. Brassfield*, 81 Mo. 151 ; *Bowers v. State*, 29 Ohio St. 542. (3) The instructions given by the court properly declared the law of the case, while those asked by defendant and refused were properly refused.

SHERWOOD, J.—The defendant was indicted under section 1259, Revised Statutes, for the seduction of Sarah Loe, and on trial had was convicted and his punishment assessed at two years in the penitentiary. He had been previously tried on the same indictment and found guilty, and his punishment assessed at a fine of four hundred dollars and one day's imprisonment in the county jail, but on his motion for a new trial this verdict was set aside on the ground of the insufficiency of the evidence ; and on the second trial he interposed the plea of once in jeopardy, to which the state demurred and the plea was held bad.

I. There was no error committed touching this plea. Section twenty-three, article two, of our Bill of Rights does not embrace a case of this kind. If a person be acquitted by a jury he could not again for the same offence be placed upon trial ; for this would be to put him "in jeopardy" within the direct terms of the constitution ; but where, as here, the defendant moved for a new trial, he "may again be put upon trial upon the same facts before charged against him, and the proceedings had will constitute no protection." Cooley's Const. Lim. 327-8 ; *State v. Hayes*, 78 Mo. 600.

II. It was error to permit the state to cross-examine the defendant as to matters not testified to by him in chief. The statute on this point (sec. 1918) is very plain and the rulings of this court on the point have been so

frequent that it would seem that a very little attention on the part of trial courts would prevent the necessity of our ruling the point any more. *State v. Porter*, 75 Mo. 171 ; *State v. McGraw*, 74 Mo. 573 ; *State v. Turner*, 76 Mo. 351 ; *State v. McLaughlin*, Id. 324 ; *State v. Douglass*, 81 Mo. 231.

III. A more important point is now to be discussed ; it is this : whether the defendant should have been permitted to show that prior to the time the alleged seduction took place, which, it seems, was in May, 1880, the prosecutrix had been guilty of acts of lewdness and unchastity with other men than the defendant. In cases of *rape* the point of the admissibility of evidence of specific acts of unchastity on the part of the prosecutrix, occurring with other men prior to the one charged in the indictment, has not met with a uniformity of ruling. I here collate some of the authorities which deny the admissibility of such evidence : *Rex v. Hodgson*, Russ. & Ry. Cr. Cas. 211 ; *Rex v. Clark*, 2 Stark. Rep. 241 ; *Reg. v. Holmes*, 12 Cox C. C. 137 ; *Pleasant v. State*, 15 Ark. 624 ; *State v. Jefferson*, 6 Ired. 305 ; *State v. Forshner*, 43 N. H. 89 ; *State v. Knapp*, 45 Ib. 148 ; *People v. Jackson*, 3 Parker C. R. 391. Affirming the admissibility of such evidence, among others, are : *Rex v. Barker*, 3 Carr. & P. 589 ; *Rex v. Martin*, 6 Ib. 562 ; *Reg. v. Robbins*, 2 Mood. & R. 14 ; *People v. Abbott*, 19 Wend. 192 ; *State v. Benson*, 6 Cal. 221 ; *State v. Johnson*, 28 Vt. 512 ; *State v. Reed*, 39 Vt. 417 ; *State v. Murray*, 63 N. C. 31 ; *Sherwin v. People*, 69 Ill. 55 ; *Strang v. People*, 24 Mich. 1.

The opinion of Judge Cowen in *People v. Abbott*, *supra*, which affirms the admissibility of evidence of particular acts of unchastity in cases of rape, is a very able one, reviewing the authorities then extant on the subject. That case has been criticised, but it has been frequently followed, and the ideas it embodies are fast gaining ground, as shown by some of the recent citations

I have made. The reasoning of that case I have never seen answered, nor do I believe it can be. I have cited it, as well as others of like sort, because believing that authorities which recognize the rule in cases of that character sanction similar evidence in cases like the one under discussion. In short, that wherever by the nature of the proceeding, or the character of the prosecution, the chastity of the prosecutrix is brought into question any evidence which tends to impeach her chastity ; to render it less probable that she was ravished in the one case or seduced and debauched in the other, is competent and relevant, whether consisting of evidence of her general reputation or of evidence of specific acts of lewdness or unchastity. And authorities are not wanting in support of this position, when the prosecution is for the offence with which the defendant in this instance stands charged.

The language of section 1259, *supra*, so far as pertinent here, is : "If any person shall, under promise of marriage, seduce and debauch any unmarried female of good repute," etc. ; and "In trials for seduction under promise of marriage the evidence of the woman as to such promise must be corroborated to the same extent required of the principal witness in perjury." Sec. 1912. In Michigan, the statute in relation to seduction reads : "If any man shall seduce and debauch any unmarried woman he shall be punished," etc. And in that state it has been ruled under that statute, that the chastity of the prosecutrix, previous to the alleged offence, is in all cases involved, and that evidence, even elicited from her own cross-examination is competent to prove illicit connection with another man. *People v. Clark*, 33 Mich. 112. Marston, J., in that case remarking : "Illicit intercourse alone would not constitute the offence charged. In addition to this, the complainant relying on some sufficient promise or inducement and without which she would not have yielded, must have been drawn aside

from the path of virtue she was honestly pursuing at the time the offence charged was committed.     *     *     *
The object of this statute was not to punish *illicit co-habitation.* Its object was to punish the seducer, who, by his arts and persuasions, prevails over the chastity of an unmarried woman, and who thus draws her aside from the path of duty and rectitude she was pursuing. If, however, she had already fallen and was not at the time pursuing this path, but willingly submitted to his embraces as opportunity offered, the mere fact of a promise made at the time would not make the act seduction. Nor will intercourse which takes place in consequence of and reliance upon a promise made, make the act seduction. If this were so, then the common prostitute, who is willing to sell her person to any man, might afterwards make the act seduction by proving that she yielded, relying upon the promise of compensation made her by the man, and without which she would not have submitted to his embraces. Illicit intercourse, in reliance on a promise made, is not sufficient, therefore, to make the act seduction.

"The nature of the promise, and the previous character of the woman as to chastity, must be considered. In most of the states, their statute makes the seduction of a woman of 'previous chaste character' an indictable offence, while there are no such words, nor any of like import in ours, and the courts have held that the words, 'previous chaste character,' mean that she shall possess actual personal virtue, in distinction from a good reputation, and that a single act of illicit connection may, therefore, be shown on behalf of defendant. If, however, we are correct in what we have already said upon the question as to what is necessary to make an act of illicit intercourse, seduction, then the chastity of the female, at the time of the alleged act, *is in all cases involved,* and the presumption of law being in favor of chastity, the defence have a right to show the contrary.

This, upon principle, then, we consider the correct doctrine, and that it necessarily follows from what we have said upon the other question." ·

In another case in that state, testimony of other men was held competent to show that they had illicit sexual acts with the prosecutrix prior to the time of the alleged seduction ; provided there was no unwillingness on their part to testify. *People v. Brewer*, 27 Mich. 134. The statute on this subject in Pennsylvania very closely resembles ours :   " The seduction of any female of good repute under twenty-one years of age with illicit connection, under promise of marriage," etc.   Under that statute it has been ruled that to constitute the offence therein mentioned, there must be illicit connection, and the female must be drawn aside from the path of virtue which she was honestly pursuing. *Commonwealth v. McCarty*, 2 Clark, 135.   Lewis, P. J., in that case said : " To constitute the offence    *    *    *    several ingredients are requisite.   Of these, in their order : 1. Seduction.   This is to corrupt, to deceive, to draw aside from the right path.   Every illicit connection is not seduction.   It cannot be said that she was drawn aside from the path of virtue unless she was honestly pursuing that path when the defendant approached her.   If she was vile and corrupt, at the time, and submitted herself to improper practices from her own lustful propensities, and without any arts of his, he is not her seducer.   If Joseph had submitted to the solicitations of Potiphar's wife, although he might have been guilty, with her, of the crime of adultery, he could not have been justly charged with that of seduction.    *    *    *    But the unrepenting and unreformed prostitute is not a being upon whom this offence can be committed, and is not the object intended to be protected by the provisions of this act of assembly.   In the process of seduction the affections of the female are gained, her mind and morals polluted, lewd thoughts are inculcated, but in order to

complete the offence, under the act of assembly, it is necessary that there should be illicit connection. This is the final consummation of the crime which brings it under the cognizance of human law. * * * It is necessary that the female should be of 'good repute.' It is possible for a female to enjoy a good reputation without deserving it, and it is often the case that a bad reputation is acquired by imprudent behavior not amounting to positive crime. In the first case it has already been shown that one of dishonest disposition, ever ready to yield to the solicitations of vice, is not a person upon whom this offence can be committed. In the latter case it is not material in the consideration of this question whether she acquires a bad reputation by imprudence or by crime. * * * It is seduction 'under promise of marriage' which is made indictable by this act of assembly. It must appear to the satisfaction of the jury that the seduction was accomplished by means of a promise of marriage. Seduction by any other means does not fall within the condemnation of the act."

These remarks I regard as an admirable analysis, not only of the statute of Pennsylvania, but also of our own statute.

Our statute is worded a little differently, but in substance and effect is the same and possesses the same essential elements. Now, if it be true, as is clearly deducible from the foregoing authorities, that the word, "seduce," *ex vi termini*, implies *chastity* as a *condition precedent* on which the act of seduction is to operate, resulting in the end in debauchment, the *physical* deprivation of chastity as the consummation of the crime, against which our statute is leveled, I am unable to discern any material difference between that statute and those of other states, where the language is: "Any man who shall, under promise of marriage, seduce and have illicit connection with any unmarried female of previous

chaste character," etc. Stat. of N. Y. . "If any person seduce and debauch any unmarried woman of previously chaste character," etc. Stat. of Iowa. For I do not see how the words, "previous chaste character," are specially significant, if full force be given to the word, "*seduce*," which bears with it in this instance as its own intrinsic and inseparable meaning the idea of *destroyed chastity*. "The word, '*seduce*,' though a general term, and having a variety of meanings, according to the subject to which it is applied, has, when it is used with reference to the conduct of a man towards a female, a precise and determinate signification, and is universally understood to mean an enticement of her on his part to the surrender of her chastity by means of some art, influence, promise or deception calculated to accomplish that object, and to include the yielding of her person to him, as much as if it was expressly stated." *State v. Bierce*, 27 Conn. 319 ; *Dinkey v. Commonwealth*, 17 Pa. St. 126. *How can that be destroyed by the seducer's insidious wiles and arts which at the time of its supposed destruction had no existence?* Any evidence, therefore, which shows, or materially tends to show that there was, at the time the alleged offence is charged to have been committed, *no chastity*, in the given case cannot be otherwise than competent and relevant. How better can you establish this fact than by specific acts of unchastity ? Is it not the highest and best evidence of the fact in issue, and will not one of the most hackneyed rules of evidence apply as well here as in innumerable other cases of daily occurrence ? Evidence of prior specific acts of unchastity with the *defendant himself* is now universally received, as well in cases of seduction as in cases of rape. What for ? To show that in the latter class of cases there was less likelihood of absence of consent ; and that in the former, in consequence of a prior act of the defendant, *there was no chastity left to seduce*. Can it be material by whom the prior act be performed,

whether by the defendant, or whether by any one else ? *Is it any the less seduction because Jones is the seducer instead of the defendant, Smith ?* If in any civil or criminal trial where Smith is defendant I offer evidence showing a prior specific act of Jones which rendered the subsequent act of defendant, Smith, morally as well as physically *impossible*, will any court in christendom reject the proffered evidence ?

But it is said by some of the authorities in cases of rape and seduction, the prosecutrix comes prepared to defend her *general reputation* for chastity, but not prepared to defend against charges of prior particular acts. Why, then, admit evidence of such acts with the defendant himself ? Is the prosecutrix any the better prepared against evidence of such acts on his part than on the part of others ? Does she not, by coming on the witness stand, declare her chastity, assert that at the time of the alleged offence she was possessed of that of which the defendant deprived her, and thus committed the offence ? Is it not "the *gravamen*" of the state's complaint that a pure and chaste female has been rendered impure and unchaste by the seduction and illicit connection of the defendant ? *West v. State*, 1 Wis. 209. This being so, is it not illogical in the extreme to admit evidence of particular acts on the part of A, going to show the moral and physical impossibility of a crime having been committed, and yet deny and repudiate evidence of a similar import on the part of B ? Where, in all the annals and precedents of jurisprudence, can similar instances of inconsistency be found ? But whether the prosecutrix be better prepared, on the score of her general reputation for chastity, than on the score of particular acts, should not be allowed to prejudice a defendant's cause and sacrifice his life or his liberty, on the altar of an absurd technicality. In *Shirwin v. People*, 69 Ill. 55, where the prosecution was for *rape*, and the

question was whether evidence was admissible as to prior sexual acts with other men, it was ruled admissible, and it was there said : "*The right of the accused to defend must be as broad as that of the prosecution to criminate.*"

If I have been correct as to what is meant by our statute, as to what is necessarily implied by the words, "*seduce and debauch*"—and in this, I think the authorities I have cited, as well as sound reason, fully support me—if *chastity* is the *sine qua non* of the offence of *seduction*, then the authorities in the states of New York and Iowa, whose statutes I have quoted, abundantly uphold the position, that in cases like the present you may show in defence that prior to the offence charged the prosecutrix was guilty with other men. *State v. Sutherland*, 30 Iowa, 570 ; *State v. Shean*, 32 Ib. 88 ; *Kenyon v. People*, 26 N. Y. 203.

I am further supported in the position taken by adjudications in the state of Georgia. Thus, in *Wood v. State*, 48 Ga. 192, and *Mann v. State*, 34 Ga. 1, where the statute reads : "Any person, who, by persuasion and promise of marriage, or by other false and fraudulent means, shall seduce a virtuous unmarried female," etc., and it was there held admissible, in prosecutions under that statute, to introduce in defence evidence which fell short of actual sexual guilt, but showed that the prosecutrix was corrupt in morals and unchaste in mind prior to the offence charged, and, therefore, could not have been seduced, corrupted or drawn aside from the path of virtue. If the deductions I have made from the statute, when reasoning upon it and the authorities cited, be not the correct one, then, as no corroborating evidence except as to the *promise of marriage* is required, it will be in the power of some designing woman of "*good repute*," one who has never worn the "*scarlet letter*," *though in habit and at heart a harlot*, to inveigle, by her fascinations, any one into a promise of

marriage in the presence or hearing of some convenient witness, and then by her own unaided, uncorroborated oath, prove the *falsehood* of seduction, and then give him the wretched alternative of wedlock with her in all her vileness, or else the fate and infamy of a felon ! I cannot believe that the legislative protection, intended only for the *pure and innocent* in heart, was designed to be extended over those who, being vile and impure, *have nothing left for the law to guard*.

I must, therefore, hesitate very long before accepting any other conclusion than the one already announced. And in view of our stringent statutory provisions, and of the ease with which the *mere fact of seduction* can be established, the admonition of Lord Hale in respect of another sexual offence, is equally applicable to the crime under discussion. Indeed, there are many circumstances incident to the crime of rape which strongly tend to corroborate the prosecutrix, while here, the crime, according to its definition, being secret and by consent, there is, under our statute, no corroboration either asked or necessary.

Counsel for the state cite *Bowers v. State*, 29 Ohio St. 542, as being in opposition to the views already advanced. The statute of that state is a peculiar one. It reads: "That any person over the age of eighteen years who, under promise of marriage, shall have *illicit carnal* intercourse with any female of good repute for chastity, under the age of eighteen years, shall be deemed guilty of seduction." It is quite plain that this statute differs materially from ours ; because an act of *simple fornication*, without any of the seducer's arts being practiced, without the female being drawn aside from the path of virtue, makes the accused guilty of what might be not inaptly termed *statutory seduction*. Under that statute, the *seduction* is the *result* of the *fornication*, instead of, as under our statute, the *latter* the *result* of the *seduction*. That case, in any view,

was but lightly considered ; for though it holds that the testimony of the defendant was competent to show that the criminal act was not performed under promise of marriage, and that he had had sexual intercourse with the female before the time of her alleged seduction, yet affirms the judgment of the trial court which refused the defendant an instruction based on and in conformity with such testimony.

Whatever view, however, may be taken of that case, the statute on which it is based differs so much from our own that there is no practical parallelism between them. The case of the *State v. Brassfield*, 81 Mo. 151, is also in opposition to the views herein expressed, but on mature reflection and a careful examination of the authorities there cited, as well as others which have been commented upon, I am of opinion that we went too far in that case as to the rejection of evidence of prior acts of sexual intercourse between the prosecutrix and others than defendant. Of course, no opinion is expressed, because not required by the facts of this record, as to a female who had once fallen, and afterward had reformed, and afterwards had been seduced under promise of marriage.

IV. There was error in permitting Mrs. Loe to testify as to a promise of marriage made by defendant in October, 1881. This was seventeen months after the alleged seduction, and, therefore, could shed no light on what was done at the time the alleged seduction occurred.

For the reasons aforesaid the judgment should be reversed and the cause remanded. Norton and Black, JJ., concur ; Ray, J., in the result ; Henry, C. J., concurs on some points, and files a dissenting opinion.

HENRY, C. J., DISSENTING.—I concur in reversing the judgment, but dissent from so much of the foregoing

opinion as relates to the proof of specific acts of prosti-
tution alleged to have been committed by the prosecutrix
before her seduction by defendant. The case of the
*State v. Brassfield*, 81 Mo. 151, recently decided by this
court, in which every member of the court concurred,
was duly considered and the authorities cited in the
opinion delivered fully sustain the conclusions reached.
The majority opinion in the present case is an elaborate
review of adjudications in rape and seduction cases
which have no application at all to the statutory crime
for which this defendant was indicted. If the construc-
tion placed upon the statute by my associates is the
proper construction, then the words, "of good repute,"
might be stricken from the section as surplusage. The
section (sec. 1259, R. S.) is as follows : "If any person
shall, under promise of marriage, seduce and debauch
any unmarried female of good repute," etc. In the ma-.
jority opinion the word, "seduce," is defined, and it is
contended that it, *ex vi termini*, implies the debauching
of a woman who has never been seduced before. If that
is what the legislature meant, the section would have
declared the seduction of any unmarried female under a
promise of marriage to be a felony, punishable, etc.

What was the object of the statute and why were
the words, "of good repute," employed ? The general
assembly evidently bore in mind the fact that a woman
may, on one or more occasions, have been led astray and
yet not be so abandoned as to make a reformation im-
possible. That although she may have had sexual con-
nection with one man, it does not follow that she will
yield her person to the solicitations of another ; and
that when such a woman will again be overcome only by
a promise of marriage the man shall be punished for
procuring her consent by such means. There were two
classes of statutes on the subject in the other states of
the Union, one containing provisions similar to ours, as
in Ohio ; and the other differing from it, in that they

provide for the punishment of seduction in the strict sense of the term, by declaring that the crime shall consist in seducing, by means of a promise of marriage, "a woman of previous chaste character." · Under the latter statutes it has been held that proof of specific acts is admissible, for the reason that "previous chaste character" and "virtuous" are synonymous  *Andre v. State*, 5 Ia. 389 ; *State v. Carron*, 18 Ia. 375 ; *State v. Sutherland*, 30 Ia. 571.   But in Ohio, under a statute similar to ours, such evidence was held inadmissible on the ground that the crime consisted not only in seducing a virtuous woman, but a woman of good repute for chastity.  *Bowers v. State*, 29 Ohio St. 542.   Our legislature chose to adopt substantially the Ohio statute, and, I think, for good and sufficient reasons.   If a female is not so abandoned as to have lost her reputation by her unchastity, but has retained enough self respect to conceal it from the world, she may be reclaimed and should be protected against one who would induce her to surrender her person to him upon a promise of marriage, made in order that he might gratify his carnal desires, with no purpose to fulfill his engagement   That he has to resort to such means to accomplish his design is proof conclusive that it was a seduction under a promise of marriage.   May not a woman be twice seduced, or oftener ?   Is it to be recognized and announced as a legal principle that once unchaste always unchaste ?   Shall the avenues to reformation and respectability be thus forever closed against the victim of a man's licentiousness ?   Shall the law itself outlaw her, and because she has once been so unfortunate as to fall into a seducer's snares, while amply protecting the more fortunate or less tempted, leave her at the mercy of heartless libertines, to take care of herself if she can ?   She may be of good repute, moving in the best circles of society, with a determination never again to step aside from the paths of virtue, and shall a heartless libertine, who learns of her former fall, after trying

all other usual methods and artifices to lead her astray, accomplish his purpose by a promise of marriage and then escape the punishment he so justly merits by proving her former guilt?

That men may be victimized by designing prostitutes is no answer to the argument. No man has to resort to a promise of marriage in order to cohabit with a prostitute, and that a man can only get a female's consent by a promise of marriage is conclusive evidence, to my mind, that that woman as much deserves the protection of the law as one who has always been chaste. The opinion of my associates is pregnant of authorities that do not bear upon the question, and full of sentences that are grammatically and rhetorically faultless; but imputes to the general assembly, by their construction of the act, a heartlessness and indifference toward a class of females, who need encouragement and support in the extremely difficult task of reforming their lives, and resisting the temptations which beset them, of which I do not believe that body guilty. If the general assembly had intended what the majority opinion construes the section to mean, they would never have inserted the words, "of good repute," when there could have been no doubt its import would have been as my associates contend it is now, if these words had been omitted. Effect is, if possible, to be given to every word in a statute, and if those words were not inserted for the purpose herein indicated they are superfluous.

Seduction, says Webster, is: "Appropriately the crime or act of persuading a female, by flattery or deception, to surrender her chastity." If, in the statutes under consideration, our general assembly or the legislatures of other states employed the word in the above sense strictly, as contended by my associates, then if they have provided that if a man should, under a promise of marriage, seduce an unmarried female, he should be guilty of a felony, they would have accomplished all

The State v. Patterson.

that was designed, and the words, "of good repute," "of chaste character," or their equivalents, would have been without meaning and out of place in the statute. And if the word, "seduce," is employed in those statutes in that sense, then it follows that a female who has once fallen can never have the protection of the statute. But the word, "seduction," has another meaning which has been overlooked by my associates. It signifies: "To draw aside or entice from the path of rectitude." A woman, after having once surrendered her chastity, may again be in the path of rectitude and be "enticed" or "drawn aside" from it; and in that sense it was used in our statute. This makes sense of the section, gives effect to all the words employed, and utterly refutes the argument contained in the opinion from which I dissent. The word, "repute," means "character reputed or attributed, established opinion." Repute and character are not synonyms. One may have a reputed character which in fact he is not entitled to, and it is not to be assumed that the legislature was ignorant of the meaning of the terms employed in the statute.

I am utterly unwilling to announce as the proper construction of our statute, that while a man may be incarcerated in the penitentiary and forever disgraced for seducing a chaste female, under a promise of marriage, he may, with impunity, by the same means, lead astray a poor unfortunate who, sorely tempted, once fell, but is endeavoring to lead a virtuous life, determined to err no more. Such need the protection of law, and are as much entitled to it as those who have never been so tempted, or have been so surrounded as to be better able to resist it.

When a woman taken in a fault was brought before Jesus and accused of her crime by Jews who would have stoned her to death, he reproved her accusers, and said to the poor, trembling woman: "Go and sin no more." He thought it possible for her to obey his injunction, and

I am inclined to believe that the lesson taught by that touching incident was not lost upon the general assembly which enacted the law. I may be in error in my construction of the statute (I do not claim to be infallible), but it is one which does honor to the legislature which enacted it.

It is what, in my judgment, the terms employed import, and so construed it is just such a law as the best interests of society demand, and I think we commit eggregious error in overruling the *Brassfield case.*

