The State v. Wheeler.

THE STATE v. WHEELER, *Appellant.*

DIVISION TWO.

1. **Criminal Practice:** PREJUDICE OF JUROR: NEW TRIAL. On a trial for seduction under promise of marriage one of the jurors, after they had been sworn and before the introduction of evidence, used most brutal language in regard to the defendant who at once brought the matter to the attention of the court, and challenged the juror's right to sit on the trial. *Held*, that the trial court erred in not granting a new trial because of the prejudice of the juror.

2. ———: SEDUCTION UNDER PROMISE OF MARRIAGE. Where there is no evidence that the prosecutrix was an unmarried woman at the time of the alleged seduction a conviction will not be sustained.

3. ———: REASONABLE DOUBT: INSTRUCTIONS. It is not error that an instruction hypothecating facts authorizing a verdict of guilty does not require the facts to be found beyond a reasonable doubt, where the jury are properly instructed on the latter in a separate instruction.

4. **Seduction Under Promise of Marriage:** "GOOD REPUTE." A female of "good repute" in the statute relating to seduction under promise of marriage (R. S. 1879, sec. 1259) means one of "good reputation."

5. ———: CORROBORATION. An instruction as to corroboration (under R. S. 1879, sec. 1912) necessary to convict in such case approved.

*Appeal from Jackson Criminal Court.*—HON. J. M. SANDUSKY, Judge.

REVERSED AND REMANDED.

*J. W. Beebe* and *L. H. Waters* for appellant.

: (1) The court erred in refusing to discharge the juror Lynch. His statement, made after the opening statements of counsel had been made and the jury had separated, that "If the G—d d———d son of a b—h promised to marry the girl, why didn't he do it," in the presence of a crowd on the street, disqualified him from acting as a juror. The court had the power to discharge him, and should have done so. Thompson on Trials, sec. 90; *State v. Sternberg*, 59 Mo. 410. (2) The state, in cross-examining the witness McLanahan, asked him, against defendant's objection and without a rebuke from the court, the following question: "Mr. McLanahan, you were a member of the jury that convicted the defendant, wasn't you?" This was an improper reference to a former verdict in the case, and is prohibited by statute. R. S. 1889, sec. 4268; *State v. Leabo*, 89 Mo. 247. (3) The court erred in admitting evidence of a promise to marry, made after the alleged seduction. *State v. Patterson*, 88 Mo. 100; 102 Pa. St. 408. (4) The state failed to prove that the prosecutrix was an unmarried female. That was a material fact, and should have been proven. (5) The court erred in giving instructions, numbered 1 to 10, inclusive.

*John M. Wood*, Attorney General, for the State.

GANTT, P. J.—Defendant was indicted at the February term, 1884, of the criminal court of Jackson county. The cause was tried April, 1890. After the jury was sworn, and the opening statements of counsel made, the jury were allowed to separate, and the court adjourned until the following morning.

After the adjournment, one Lynch, a member of the jury, in the hearing of a number of persons, said of defendant, "If the G—d d———n son of a bitch promised to marry the girl why didn't he do it?" On the

meeting of the court, defendant at once filed a number of affidavits of persons who heard the statement made by Lynch, and challenged Lynch's right to sit longer as a juror in this case. The challenge was overruled. The point was again made in the motion for a new trial, supported by affidavits. Lynch made affidavit that he did not recollect making the remark, admits he was informed by the deputy marshal that defendant's counsel were fussing about it while he was on the jury, and says he was unbiased.

The prosecutrix testified that defendant commenced waiting on her in the spring of 1882 ; that they soon became engaged ; that along in the summer or fall they had a falling out, and he quit his visits for some six weeks. He then renewed his visits, and they renewed their engagement. The twelfth of July, 1883, was set for their marriage ; that on the evening of July 1, 1883, he seduced her in the parlor of her father's house ; that it occurred about nine P. M., on the sofa. Her father and mother were up stairs in bed. A hired girl was upstairs in the room occupied by the girl and herself.

The father swears that he was sleeping downstairs, and that the diningroom was between his sleeping room and the parlor. The front door of the house opened into the parlor, so that there were three doors leading out of it. In answer to a question asked by the state as to what was the inducement that led her to submit to carnal intercourse with defendant, she said, "Well, he said he would marry me; that it wouldn't keep him from marrying me; I told him he wouldn't want to marry me after that, and he said he would." The state then asked her, "Was that the inducement?" and she answered, "Yes, sir."

Nancy Wheeler and her mother were allowed to testify, against defendant's objections, that after it was found that she was in a family way the defendant promised to marry her ; two or three witnesses swore that she was a woman of good repute prior to June and

July, 1883. The mother and a neighbor testified that she had a blue silk dress, a white dress and some underwear made up in the spring of 1883. The mother swore that in the fall of 1883 the defendant told her they were engaged. ¡She said she never testified to that before, although she had twice testified in the case.

The defendant introduced a number of witnesses who testified that the reputation of Nancy Wheeler, prior to June, 1883, was bad; that the reputation of Nell Murphy, her associate, was bad; that the prosecutrix was known as Matt Wheeler and Sweeter Wheeler. One witness swore that he and another man saw her after an evening performance of a circus go to the fair grounds and into a sheep stall. Another said he saw her and a man named Williams in a hotel after night, lying on the same sofa. Another said he saw her and a Mr. Sampson on a bed on Sunday afternoon. Mrs. Jenkins testified that the prosecutrix told her that she had a good receipt to prevent pregnancy. The prosecutrix denied all the foregoing, but admitted that prior to 1883 she kept a stand at the public market of Kansas City for nearly a year.

A witness for the state testified that she kept company with one Dick Metzker, a married man, and a bad character, prior to 1883. All other witnesses testified that she was frequently seen at Russell's feed store as late as nine P. M. There was no evidence that she was an unmarried female.

The court gave the following instructions: "1. If they believe from the evidence that defendant, in Jackson county, Missouri, and within three years prior to the fourth day of March, 1884, under promise of marriage, seduced and debauched Nancy M. Wheeler, and that said Nancy M. Wheeler was then and there an unmarried female of good repute and under the age of twenty-one years, then the jury will find the defendant guilty as charged, and assess his punishment at imprisonment in the penitentiary not less that two, nor more

than seven, years, or by fine not exceeding $1,000, and imprisonment in the county jail not exceeding one year.

"2. A female is said to be of 'good repute,' within the meaning of these terms as used in the first instruction, when she is honestly pursuing the path of virtue. She is said to be 'seduced,' within the meaning of that term, as used in the first instruction, when by arts and blandishments she is deceived, corrupted and drawn aside from the right path. She is said to be 'debauched,' within the meaning of that term, as used in the first instruction, when she is carnally known.

"Every illicit connection is not seduction. It cannot be said that a female is drawn aside from the path of virtue unless she is honestly pursuing that path when approached. If her mind is corrupt and polluted with lewd thoughts, and she is ready to submit to improper embraces, as opportunity offers, from her own lustful propensity, and without any arts or blandishments of him with whom she has sexual intercourse, in such case she cannot be said to be seduced by the party with whom she has improper sexual relations.

"If the jury find from the evidence that the defendant had illicit connection with the plaintiff under promise of marriage, but further find that there was no seduction, within the meaning of the word as already defined, they will find the defendant not guilty."

And refused the following: "If, therefore, you shall believe from the evidence that the defendant had carnal intercourse with the said Nancy, and that she yielded to him solely on account of a promise of marriage, without the practice by him of arts and blandishments, then, though she may have been of good repute, she was not seduced, and you must acquit."

During the concluding speech of the prosecuting attorney, he stated to the jury, against defendant's objection, as follows: "All of the defendant's witnesses

from Odessa had been bought up. Yes, gentlemen, they have all been bought up by the defendant." The said attorney was allowed to proceed with his said remarks without rebuke from the court, and defendant excepted.

The jury returned a verdict in the following form: "We, the jury, find the defendant guilty, in manner and form, as charged in the indictment, and leave it to the court to fix the punishment."

The court, thereupon, fixed the punishment at imprisonment in the county jail for one year, and a fine of $1,000. In his motion for a new trial the defendant assigned as errors instructions given for the state, and refusal to give those prayed for by defendant; the misconduct of juror Lynch; the misconduct of the prosecuting attorney in his closing speech; the insufficiency of the evidence to sustain the verdict; the illegality of the verdict.

I. In our opinion, the court erred in not granting a new trial, because of the evident prejudice of the juror Lynch. Jury trials would have little to commend them if the jurors are not impartial and unprejudiced. This juror on his *voir dire* had answered that he stood indifferent between the state and the defendant, and yet, before he had heard one word of evidence, the proof is overwhelming that he gave expression to the most brutal language in regard to the defendant. The expression at once stamped him as utterly unfit to pass upon the guilt or innocence of a party on trial for a grave offense. He does not deny the words attributed to him. The defendant at once brought the matter to the attention of the court, so that he is not chargeable with any laches in this regard. In *State v. Ross*, 29 Mo. 32, a new trial was awarded under similar circumstances, and that case was approved in *State v. Breen*, 59 Mo. 413; *Rice v. State*, 16 Ind. 298.

II. The record nowhere discloses that the prosecutrix was an unmarried woman at the time the offense

is charged to have been committed. Without doubt, it was essential to a good indictment in this case, that it should be charged that defendant seduced an *unmarried* woman. The legislature in its wisdom has seen fit to give protection against this crime to unmarried women alone. 1 Bishop Crim. Proc., secs. 81, 86, 88 ; *State v. Hayward*, 83 Mo. 299, and cases cited. In *State v. McCasky*, 104 Mo. 644, it was said, Judge THOMAS delivering the opinion : "There was no evidence whatever offered to show that the prosecutrix was a woman of good repute, and in such case there can be no conviction for the offense charged against the defendant in this case. The indictment must allege, and we think the better doctrine is, the state must prove in the first instance, that the woman alleged to have been seduced is of ' good repute.' " 1 Bish. Crim. Proc., secs. 1103–1105; *State v. Hill*, 91 Mo. 423.

It is just as essential that it should appear by evidence in the case that the female was an unmarried woman, as it is to show she is of good repute. Without evidence from which the jury could find this essential fact, no conviction can stand. We know of no presumption that a woman is unmarried in the absence of any evidence whatever on the point. The objection is available not only because the verdict was without material evidence to sustain it; but without evidence, this point was erroneously submitted to the jury in the instructions.

III. Counsel for defendant challenges the instructions given by the court. *First*, because instruction, numbered 1, did not require the facts to be found "beyond a reasonable doubt." The tenth instruction defined " reasonable doubt " correctly, and gave defendant the full benefit of the presumption of innocence. The punishment was by some inadvertence misstated. The maximum is five years in the penitentiary, not seven. However, no harm resulted to defendant from this oversight. The second instruction follows the law

as announced in this court in *State v. Patterson*, 88 Mo. 88, and subsequently adhered to in *State v. Reeves*, 97 Mo. 668, with the exception that we think the court improperly defined "good repute." "Good repute" is synonymous with and only means "of good reputation." The remarks of Judge SHERWOOD in *State v. Patterson, supra*, had reference to the word "seduce" and not "good repute." As was well said by LEWIS, P. J., in *Commonwealth v. McCarty*, 2 Pa. L. J. R. (Clark) 351: "It is possible for a female to enjoy a good reputation without deserving it, and it is often the case that a bad reputation is acquired by imprudent behavior not amounting to positive crime." We see no reason for disturbing the force of these decisions.

As to the corroboration necessary to sustain this charge the court instructed as follows: "The jury cannot find that there was a promise of marriage upon the evidence of Nancy M. Wheeler alone, but under the law her evidence as to the promise of marriage must be corroborated; that is, confirmed either by other direct or positive evidence as to the promise of marriage, or by admissions of defendant as to his engagement of marriage, or by facts and circumstances such as usually attend an engagement of marriage. But, where facts and circumstances such as usually attend an engagement of marriage are relied upon as corroboration, slight and indifferent particulars are not sufficient, nor will proof of attention, merely, be sufficient unless from its duration and constancy and from the acts, conversation and conduct of the parties it reasonably carries conviction to the mind that an engagement of marriage exists, and that the attention is not merely such as might be reasonably expected, without impropriety, from a gentleman towards a lady whose society was agreeable; and the corroboration of the prosecuting witness as to the promise of marriage, whether direct and positive, or consisting of facts and circumstances as stated above, must be something more

than sufficient to overcome the oath of the defendant, and the legal presumption of innocence."

We think this very clearly informed the jury that the female must be corroborated as to the promise of marriage and the amount of evidence that was required. We find no other errors in the case.

The judgment is reversed and cause remanded for new trial. All concur.