THE STATE v. SHARP, *Appellant.*

|132    165|
|170   ²406|

### Division Two, January 21, 1896.

1. **Criminal Law**: SEDUCTION: GOOD REPUTE OF PROSECUTRIX: PRACTICE. The words "good repute," as used in Revised Statutes, 1889, section 3486, declaring it a felony for any person, under or by promise of marriage, to "seduce and debauch any unmarried female of good repute under eighteen years of age," are synonymous with and mean "of good reputation," and, in a prosecution under the statute, the good reputation of the prosecutrix is made an element of the offense, and it devolves upon the state to prove that she was of good repute at the time of its commission.

2. ——: ——: ——: ——. In a prosecution under the statute for seducing a female of good repute under eighteen years of age, under promise of marriage, it is no defense that the female had had intercourse with others, provided that she was at the time she was seduced by defendant of good reputation for chastity.

3. ——: ——: EVIDENCE: HARMLESS. In a prosecution under the statute for seducing under promise of marriage a female under eighteen years of age, evidence that the mother of the prosecutrix was a widow will not constitute reversible error.

4. ——: ——: ——. Where the defendant in a prosecution for seduction under promise of marriage testified to repeated visits and attentions to the prosecutrix, that he had taken her among respectable people, to parties and other places, but had never promised or intended to marry her, it was not improper to allow a juror to ask him "what his object was in going to see the girl if it was not to marry her."

*Appeal from Dallas Circuit Court.*—HON. ARGUS COX, Judge.

AFFIRMED.

*J. S. Haymes, J. W. Miller,* and *W. G. Robertson* for appellant.

(1)   The court by the addition to instructions numbers 4 and 5, virtually instructed the jury that although the prosecuting witness had once fallen, but if she had returned to the paths of virtue that would warrant a conviction, which was erroneous because, if the law, there was no evidence to show that prosecutrix had reformed, and hence no evidence on which to predicate such instruction. *State v. Primm,* 98 Mo. 368; *State v. Chambers,* 87 Mo. 406; *State v. Herrell,* 97 Mo. 109.   (2)   The state, over the objection of defendant, was permitted by the court to show that Mrs. Elizabeth Eldridge, mother of prosecutrix, was a widow, which could have no other purpose or object than to prejudice the minds of the jury. *Stephens v. Railroad,* 96 Mo. 207; *Dayharsh v. Railroad,* 103 Mo. 570; *Mahony v. Railroad,* 108 Mo. 191; *Williams v. Railroad,* 123 Mo. 573.   Although the last above authorities declare the law in civil cases, we take it that they are strictly in point in this case, for, if any difference, a man's liberty and character ought to be held more sacred than when only a question of dollars and cents is involved. (3)   The court should not have permitted the juror to inquire defendant's object in going to see prosecutrix; it tended to prejudice defendant's rights, and was an improper cross-examination of defendant, which was not brought out by his examination in chief, which was objected to at the time by defendant.   *State v. Porter,* 75 Mo. 171; *State v. McGraw,* 74 Mo. 573; *State v. Turner,* 76 Mo. 351; *State v. Douglas,* 81 Mo. 231; *State v. Patterson,* 88 Mo. 88.

*R. F. Walker*, attorney general, and *Morton Jourdan*, assistant attorney general, for the state.

(1) The defendant asked the court to give instruction number 4, which the court refused to do, but modified and gave the same, which was to the effect that it is the purpose of the statute under which the defendant is indicted to punish those who seduce under promise of marriage, females under the age of eighteen years, who are following the path of rectitude and virtue; and that if the jury find from the evidence that the prosecutrix had had sexual intercourse with any other person than the defendant prior to the alleged seduction, they should acquit him, unless they further found that at the time of the alleged seduction she was following the path of virtue and rectitude; in other words, even though the prosecutrix may at some time before in her life, covering a period of many years, have had sexual intercourse with some person other than the defendant, yet if, at the time of the alleged seduction she had reformed and was then following the path of rectitude and virtue, the defendant could not be excused or justified by reason of her indiscretions in the past; that he could lead astray, debauch, and seduce a female under these circumstances, under our statute, as well as one who had never had intercourse with anyone. *State v. Primm*, 98 Mo. 373; *State v. Thornton*, 108 Mo. 640; *State v. Patterson*, 88 Mo. 93. (2) Instruction number 5 was also modified by the court to the extent of inserting the words "at the time." This instruction told the jury, that although the defendant had intercourse with the prosecutrix under promise of marriage, yet, unless the jury further believed that the prosecutrix was not a person of good repute "at the time," then they should acquit the defendant. This instruc-

tion was correct, for the issue was as to her reputation at the time of the alleged seduction, and not what it might have been some years before. In fact, this instruction follows the language of the statute which seeks to punish those who seduce a female under the age of eighteen years, of good repute. Section 3486, R. S. 1889; *State v. Thornton, supra; State v. Primm, supra; State v. Patterson, supra.* (3) The evidence that the mother of the prosecutrix was a widow was harmless and did not constitute reversible error. (4) While the defendant was being examined one of the jurors asked him what his object was in going to see this girl if it was not for the purpose of marrying her. To this question the defendant objected because immaterial, irrelevant, and "this is the defendant." *First*, it is suggested that the objection to this question is not sufficient, no proper reason being assigned therefor. The defendant had testified that he had been paying this girl attentions—almost constantly in her company—and it was proper for the jury to know what his object was in going to see her. (5) The second instruction for the state correctly defines the term "good repute," and the words "seduce" and "debauched" in language approved by this court in recent cases. *State v. Wheeler*, 108 Mo. 665; *State v. Brandenberger*, 118 Mo. 185; *State v. Patterson*, 88 Mo. 88.

BURGESS, J.—At the April term, 1895, of the circuit court of Dallas county defendant was tried and convicted for having, under promise of marriage, seduced one Elizabeth Eldridge, an unmarried female of good repute under the age of eighteen years. His punishment was fixed at two years' imprisonment in the state penitentiary. From the judgment and sentence he appealed.

The evidence showed that in the latter part of June or first of July, 1893, defendant began keeping company with the prosecuting witness, calling upon her at her home, and accompanying her to and from different places in the county of Dallas where she lived with her mother, on a farm about four miles from Buffalo in said county. She was delivered of a child on the twenty-seventh day of April, 1894, of which defendant was the father. She was then under eighteen years of age. She testified that defendant asked her to marry him in about four weeks after he began waiting on her, and that she promised to do so. That relying on said promise he had carnal connection with her about the first of August, 1893. That no other man had ever had connection with her.

Her mother testified to the attention of defendant to her daughter, her preparation for marriage, etc. That after she discovered that her daughter was in a family way, she sent for the defendant, and asked him what reparation he would make for having ruined her daughter, when he replied that he was willing to do anything she (Elizabeth) said, and that he would marry her if given time.

Defendant testified as a witness in his own behalf, and denied that he had ever promised to marry Elizabeth or that he stated to her mother that he would do so, if given time. He did not deny his attentions to the prosecuting witness, that he had had intercourse with her, or that he was the father of her child.

The evidence as to her character for chastity was conflicting. Three witnesses, Childers, Hendrixon, and Bone testified that they had intercourse with her before the time of her alleged seduction by defendant. This was denied by her. It was also shown by other witnesses that Childers and Bone had said that they knew nothing against her character.

Defendant's first contention is that the court committed error in modifying instructions numbered 4 and 5, and in not giving them as asked. They are as follows:

"4. You are further instructed that it is the purpose of the statute under which the defendant is indicted only to punish those who seduce under promise of marriage females under the age of eighteen years who are following the path of virtue and rectitude, and if you believe from the evidence in this case that Elizabeth Eldridge had sexual intercourse with any other person than the defendant prior to the alleged seduction you will acquit. *Unless you further find that at the time of the alleged seduction she was following the path of virtue and rectitude.*

"5. That although you may believe the defendant did have sexual intercourse with Elizabeth Eldridge under promise of marriage, yet if you further believe that the said Elizabeth Eldridge was not a person of *good repute at the time* you will acquit the defendant."

The words in italics were added by the court.

The statutory offense is: " If any person shall, under or by promise of marriage, seduce and debauch any unmarried female of good repute under eighteen years of age," etc.

" Good repute" is synonymous with and only means of "good reputation." *State v. Wheeler*, 108 Mo. 658. Accepting this definition as correct, the words "good repute," as used in the statute quoted, mean of good reputation, and as the good reputation of the prosecutrix is made an element of the offense it devolves upon the state to prove that she was of good repute at the time of the commission of the alleged offense. *State v. Hill*, 91 Mo. 423; *State v. McCaskey*, 104 Mo. 644. In *Zabriskie v. State*, 43 N. J. Law, 640, which was a criminal prosecution under the statute of

that state for having sexual intercourse with a female "of good repute for chastity," the same rule is announced.

Witnesses on behalf of the state who were acquainted with the general reputation for chastity of Elizabeth Eldridge in the neighborhood in which she lived at the time of the alleged seduction testified that it was good. Then when the state showed that she had been seduced by the defendant under promise of marriage, and that she was under the age of eighteen years at the time, it made out a case against him, and in the absence of countervailing evidence his conviction was proper. But the defendant showed by three witnesses, viz.: Childers, Hendrixon, and Bone that each one of them had had sexual intercourse with her before the defendant had, and if this be true it is argued by defendant that she could not have been seduced by him.

The statute was not intended to punish illicit cohabitation, but was enacted for the purpose of protecting unmarried females of good repute from the wiles and seductive promises of the unprincipled libertine. The instruction as asked told the jury that if the prosecuting witness had sexual intercourse with any other person than defendant prior to the alleged seduction by him they would find him not guilty. The statute should not be restricted in its application only to females under eighteen years of age who have never stepped aside from the path of virtue. There should always be room for reformation.

In *Wood v. State*, 48 Ga. 192, under a prosecution by indictment for seduction, it was held to be error to charge the jury that whilst the woman seduced must be a virtuous, unmarried female, yet the test of her virtue was whether she had ever had before that time illegal sexual intercourse with a man.

It is always proper for the prosecution to show that although at some time the prosecuting witness has been guilty of such conduct, she had reformed and at the time of the alleged seduction was leading a virtuous life. Thus it is said in *Commonwealth v. McCarty*, 2 Clark, 351: "It is not intended to hold as the doctrine of the law, that a single error places a female beyond the protection of this benign Act of Assembly."

So in *People v. Clark*, 33 Mich. 112, it is said: "We do not wish to be understood as saying that, even as between the same parties, there could not be a second or even third act of seduction." See, also, *State v. Moore*, 78 Iowa, 494.

In *Wilson v. State*, 73 Ala. 527, it is said: "The statute is for the protection of the chastity of unmarried women, and the existence of the virtue at the time of the intercourse is a necessary ingredient of the offense; for, as has been often said, the woman who has lost her chastity, the prostitute, may be the victim of rape, but is not the subject of seduction.  *  *  * That may be true, and there may be reformation; and, at the time she yields to the man's embraces, she may have the virtue of chastity, not in the high degree of the woman who has not strayed, but yet, within the meaning of the statute entitling her to its protection." See, also, *State v. Carron*, 18 Iowa, 372; *Carpenter v. People*, 8 Barb. 603; *State v. Timmens*, 4 Minn. 325; 2 Bishop's Criminal Law, sec. 1119.

There is a wide distinction between the language used in the Missouri statute, to wit, "unmarried female of good repute," and the language used in the statutes of other states in which the crime consists in seducing a previous chaste female, or "of previous chaste character." "In order to establish the unchaste character of an unmarried female, it is not necessary to prove that she has been guilty of sexual intercourse; and that

the' term 'chaste character,' as used in our statute [Iowa], was used as signifying what the person *really is*, in distinction from that which she may be *reported to be.*" *State v. Carron*, 18 Iowa, 372. The same rule is announced in *Andre v. State*, 5 Iowa, 389; *Carpenter v. People*, 8 Barb. 603. The meaning of the term "previous chaste character" is, that she shall possess actual personal virtue, in distinction from good reputation (2 Bishop's Criminal Law, sec. 1019); and that a single act of fornication shown to have been committed by her before the time of the alleged seduction may be shown as a complete defense. *People v. Clark, supra.*

The authorities clearly show that, because a female may at some period of her life have so far forgotten her sphere, and self-respect, as to have yielded to temptation on one single occasion about which no one knows save and except herself and the other person engaged; she, by reason thereof, does not become of bad repute, entitled to no protection under the law, a prey to the lust of man, who, by reason of her misfortune, becomes licensed to deceive and betray her and find justification for his conduct, or immunity from punishment for his crime, because, forsooth, she had on some former occasion been guilty of illicit intercourse. Furthermore, if the prosecuting witness had entertained criminal relations with other men prior to the time of her alleged seduction by defendant, evidence of her good repute at the time last named was cogent proof tending to show that she had reformed and was then leading a life of rectitude.

Proof of acts of illicit intercourse by Elizabeth Eldridge with other men than defendant before the time of her alleged seduction by him, was permissible (*State v. Patterson*, 88 Mo. 88), yet, after all the question of paramount importance is, was she of "good

repute" at the time of the commission of the alleged offense, and this "is what the people of her acquaintance generally say of her in this regard; that is, the general credit for chastity which she bears among her neighbors and acquaintances." *State v. Bryan*, 34 Kan. 63.

From these considerations it logically follows that no error was committed in modifying the fourth instruction.

The fifth instruction was properly modified so as to confine the inquiry as to the character of Elizabeth Eldridge to the time the offense was alleged to have been committed.

Nor was there reversible error committed in permitting the prosecution to show over the objection of defendant that the mother of the prosecuting witness was a widow. While such inquiry was immaterial, it is impossible to perceive how the defendant could have been prejudiced thereby.

During the trial one of the jurors was permitted over the objection of defendant to ask him, "what his object was in going to see the girl if it was not for the purpose of marrying her." The grounds of the objection were that the question was incompetent and immaterial. Defendant had testified to his repeated visits and attentions to the prosecuting witness; that he had taken her out among respectable people, to parties and other places, but that he never intended to marry her, and there was no impropriety in asking him his object in so doing. Moreover, the objection was not upon the ground that the defendant had not testified to the same matter in chief. This contention is also ruled against the defendant.

Finding no reversible error in the record the judgment is affirmed. GANTT, P. J., and SHERWOOD, J., concur.