## THE STATE v. JAMES R. FOGG, Appellant.

### Division Two, November 19, 1907.

1. **INFORMATION: Clerk's Attestation.** The information is not insufficient because the clerk did not use the seal of his office in attesting the affidavit of the prosecuting attorney to the information.

2. **SEDUCTION: Exhibition of Child to Jury.** The fact that the prosecutrix in a seduction case had her child in the courtroom during the trial and took it with her to the witness stand and held it while testifying, was not reversible error.

3. ————: **Instruction: Corroboration.** It is not reversible error to refuse an instruction for defendant on the subject of corroboration, argumentative in character, where the court has already on behalf of the State positively directed the jury that prosecutrix's testimony must be corroborated, and indicated how that may be done, and fully and pointedly announced the strength such corroborative evidence must have.

4. ————: **Prior Illicit Intercourse.** An instruction which tells the jury that, if prosecutrix "had sexual intercourse with defendant or any other person or persons" prior to the date of

State v. Fogg.

the alleged seduction, "then you will acquit the defendant," is erroneous, and should be refused. It forecloses any consideration of her reformation. To be complete the words, "unless you further find that at the time of the alleged seduction she was following the path of virtue and rectitude," or words of similar import, should be added.

5. ———: ———: Paramount Question. In a seduction case the question of paramount importance is, was the prosecutrix of good repute at the time of the commission of the alleged offense? And that means what the people of her acquaintance generally say of her in that regard; that is, the general credit for chastity which she bears among her neighbors and acquaintances.

6. ———: Instructions: Promises: Blandishments. Instructions which tell the jury that if prosecutrix consented to the sexual intercourse "in consideration of a promise then and there made to her by defendant to marry her" or "if she consented to said intercourse without the practice by defendant of arts or blandishments upon her and she yielded to satisfy her passions," or "if there was no seduction within the meaning of the word," etc., may be properly refused, if the subjects treated of by them were fully and fairly presented in an instruction given on behalf of the State.

7. ———: Reputation of Defendant. Testimony offered to prove defendant's reputation for truth and veracity, when his reputation has not been assailed, should be excluded. And the mere fact that there is a conflict between his testimony and that of the prosecutrix is not, in contemplation of law, such an attack upon his reputation as would warrant the admission of the testimony.

8. ———: Reputation of Prosecutrix. An instruction which tells the jury that if the prosecutrix's general reputation for truth and veracity has been proven to be bad, that would be no justification for defendant's seducing her, if the jury believe from the evidence that he did seduce her, is not erroneous.

9. ———: Sufficiency of Evidence: Credibility: Appellate Practice. The appellate court will not undertake to reconcile the conflict in the testimony. Where the State's testimony, if true, furnishes ample support for the verdict, and if defendant's evidence was true he should have been acquitted, the court will not say that a demurrer to the evidence should have been sustained. The credibility of the witnesses is for the jury.

Appeal from Barry Circuit Court.—*Hon. Argus Cox,* Judge.

AFFIRMED.

T. D. *Steele* for appellant.

(1) In this case the sexual intercourse was admitted by defendant before any testimony was introduced, and never denied at any time during the trial. The rule is that the prosecution, in cases of seduction, where the sexual intercourse is denied, may refer to the child born as a circumstance tending to corroborate the prosecuting witness as to criminal intimacy. But where the sexual intercourse is admitted, as in this case, the exhibition of the child or its paternity is immaterial and could serve no other purpose than to prejudice the minds of the jury against the defendant and preclude him from having a fair trial. Barnes v. State, 37 Tex. Crim. 320; Hanawalt v. State, 64 Wis. 845; Reitz v. State, 33 Ind. 187; Risk v. State, 19 Ind. 152. (2) The second assignment of error is based upon the court's refusal of defendant's second instruction: This instruction is an exact copy of the one numbered 2½ given in State v. Meals, 184 Mo. 251, and approved by this court with this additional matter added to same: "And is not merely such as might reasonably be expected between two young people who were having illicit intercourse with each other." This instruction should have been given. If the conduct and acts of the parties are relied upon for corroboration then certainly if such conduct and acts of the parties are such as might be expected from young people having illicit intercourse with each other, that element should be submitted to the jury along with the other. State v. Meals, 184 Mo. 245. (3) The trial court erred in refusing instruction 5, to the effect that intercourse might be shown by circumstances. State v. Thornton, 108 Mo. 654. (4) The next assignment of error is in refusing instruction 6, to the effect that if the prosecuting witness consented to the intercourse in consideration of the promise of

marriage and without the practice of arts or bland-
ishments by defendant, etc. This instruction has often
been approved by this court and the testimony of the
prosecuting witness was very strong to the effect that
she would have him renew the promise at each of the
numerous congresses. She also relied upon the promise
that he made not to tell it and that no one would ever
know it. In the language of many decisions, this was
bargain and barter. The refusal of this instruction un-
der the evidence was reversible error. State v. Reeves,
97 Mo. 677; State v. Meals, 184 Mo. 252. (5) As to the
next assignment of error: If it is necessary, in order
to uphold a conviction in seduction cases, that the de-
fendant should use some seductive arts, blandishments,
persuasion or wiles, then this case must fall to the
ground. Under her testimony the 7th, 8th and 9th in-
structions should have been given and their refusal
was reversible error. State v. Reeves, 97 Mo. 668;
State v. Meals, 184 Mo. 253.

*Herbert S. Hadley*, Attorney-General, and *N. T.
Gentry*, Assistant Attorney-General, for the State.

(1) The information, which was accompanied by
the affidavit of the prosecuting attorney, is sufficient
in form and substance. State v. O'Keefe, 141 Mo. 272;
Kelley's Crim. Law, sec. 555; R. S. 1899, sec. 1844. (2)
Defendant objected to prosecutrix bringing her baby
into court and allowing the child to sit in her lap in the
presence of the jury. This court has even held that it
was proper to bring the child into court, and to offer
the child in evidence, following the decisions of other
courts. State v. Palmberg, 199 Mo. 253; Woodruff v.
State, 101 N. W. 1117; State v. Fetterly, 74 Pac. 810;
Lamphere v. State, 89 N. W. 128. (3) The State's
instructions were full and complete, and very fairly
stated the law to the jury. They were such as have met
with the approval of this court. State v. Dent, 170 Mo.

398; State v. Eisenhour, 132 Mo. 140; State v. Wheeler, 108 Mo. 658; State v. McCaskey, 104 Mo. 644; State v. Hill, 91 Mo. 423. The instructions defining the crime of seduction come up to the requirements, as laid down by Judge SHERWOOD. State v. Reeves, 97 Mo. 668. (4) Defendant's refused instructions were properly refused by the trial court. Some of said instructions were a comment on the evidence of certain witnesses, and singled out the testimony of said witnesses. State v. Grugin, 147 Mo. 56; State v. Hibler, 149 Mo. 478; 2 Thompson on Trials, sec. 2330. Others were erroneous, and the substance of others had already been included in instructions given on behalf of the State. The refusal to give additional instructions, embodying the same matters, does not constitute reversible error. State v. Bradford, 156 Mo. 91; State v. Nelson, 166 Mo. 191. (5) The evidence of defendant's guilt was not only substantial, but was overwhelming. On the subject of the corroboration required: State v. Dent, 170 Mo. 406; State v. Eisenhour, 132 Mo. 147; State v. Davis, 141 Mo. 525; State v. Phillips, 185 Mo. 188; State v. Sublett, 191 Mo. 163. Our courts and text-writers have said that positive evidence in corroboration of the promise of marriage is not necessary; but that such corroboration may be proved by circumstances. State v. Hill, 91 Mo. 423; Kenyon v. People, 26 N. Y. 203; Boyce v. People, 55 N. Y. 644; Armstrong v. People, 70 N. Y. 38; State v. Curran, 51 Iowa 119; State v. Wells, 48 Iowa 673; Zabriskie v. State, 43 N. J. L. 647; Rice v. Com., 100 Pa. St. 32; State v. Timmens, 4 Minn. 332; 4 Elliott on Evidence, sec. 996; Underhill on Crim. Evid., sec. 390.

FOX, P. J.—This cause is brought to this court by appeal on the part of the defendant from a judgment of conviction in the circuit court of Barry county for seduction under promise of marriage. Omitting formal

parts, the information, which was duly verified, upon which this prosecution is based, thus charged the offense:

"D. H. Kemp, prosecuting attorney within and for the county of Barry, in the State of Missouri, acting herein under his oath of office, and upon his knowledge, information and belief, informs the court that one James R. Fogg, on the — day of March, 1905, at and in the county of Barry and State of Missouri, did then and there, under and by promise of marriage, made to one Minnie P. Hefley, by him, the said James R. Fogg, unlawfully and feloniously seduce and debauch her, the said Minnie P. Hefley, she, the said Minnie P. Hefley, being then and there an unmarried female of good repute and under twenty-one years of age, against the peace and dignity of the State."

Defendant filed an application for a change of venue on the ground of the alleged prejudice of the regular judge of that court, which application was sustained, and Hon. Argus Cox, under the provisions of the statute, was requested to try the case, and in obedience to such request did try the case in Barry county at the September term, 1906, of said court.

While in the trial of cases of this character it is essential in the trial court to have the witnesses detail minutely all the acts done and conversations had which tend to establish the commission of the offense charged, yet in the appellate court we do not deem it essential to recite in detail all of the testimony of the respective witnesses as to the commission of this offense. Testimony of witnesses in cases of this character frequently consists of statements that add nothing to the legal literature of this State and cannot be of any interest to the profession or the public; therefore we must be content with a sufficient statement of the tendency of the proof to enable us to determine the legal propositions arising from the evidence introduced. We have read

in detal the entire testimony in this cause as disclosed by the record. The State's evidence tended to prove that prosecutrix was born on August 16, 1884, and was, therefore, between twenty and twenty-one years old at the time of the alleged commission of the crime charged. At said time she lived with her parents at their home in the Pasley school neighborhood, some four or five miles southwest of the town of Cassville, in Barry county. Defendant lived in the same neighborhood. In July, 1904, prosecutrix and defendant became engaged, but quit keeping each other's company till about the first of January, 1905. About the fifteenth of January, 1905, they again became engaged and their marriage was set for the first Sunday in May following. On account of prosecutrix being sick at that time, the marriage was postponed till the fourth of July. On account of defendant having a fight and the prosecution that resulted therefrom, the marriage was postponed till the first of September. The last of September or the first of October, it was discovered that prosecutrix was pregnant and defendant quit visiting her. As soon as she and defendant became engaged prosecutrix began making a carpet, some clothes and quilts and defendant gave her some money with which to make purchases. In the spring and summer of 1905 prosecutrix procured fruit, which she canned; also put up some jelly for the family use. On the thirtieth of March, 1905, defendant requested prosecutrix to have sexual intercourse with him, but she declined. Defendant reminded her that it was only a short time till they were to be married, and assured her that no one would know it except them. He also reminded her of the money that he had given her to buy clothing with, and told her that she ought not to refuse him if she cared for and loved him. Having confidence in and loving him as she did, prosecutrix yielded to defendant several times; the seduction

occurred at her father's home at night, after her parents had gone to bed. As a result of said intercourse prosecutrix gave birth to a child on January 6, 1906. The parents of prosecutrix corroborated her as to the long-continued friendship that existed between prosecutrix and defendant, and also testified as to the preparations that she made to be married. They further testified that the defendant visited prosecutrix twice a week, took her to church and Sunday school and visited with her around the neighborhood. Other witnesses testified to the fact that prosecutrix and defendant were frequently in each other's company; attended church, Sunday school, social gatherings and took buggy rides together. Mr. and Mrs. Henry Dunn testified to seeing prosecutrix and defendant together often, and that the two took supper with them and that they were joking defendant and prosecutrix about marrying. Mr. Dunn told defendant that he and his wife would give them some canned cherries when they married. As defendant and prosecutrix walked away together that evening, defendant said: "Mr. Dunn, when me and Minnie gets to ourselves, come and see us." This was along in June, 1905. Miss Flossie Miller testified to a conversation that she had with defendant in which defendant invited her to come and see him and prosecutrix when they married; this conversation occurred the first Sunday in May, 1905. On the same day Miss Miller heard defendant say to prosecutrix that he would come and help her pick strawberries when they got ripe, and that they would put up enough to do them till strawberries come again. In the presence of Miss Ethel Henbest, defendant and prosecutrix talked about marrying and the room that they would occupy at the Hefley home. During the summer of 1905 defendant spoke to this witness about his corn crop, and said that prosecutrix was going to cook that corn the next winter. Defendant and

prosecutrix went together to look at a house called the "Merritt place," situated on the Henbest farm; and when they returned, Mrs. Henbest asked how they liked the house. Defendant said he liked it all right, but prosecutrix said that there were too many weeds down there. Defendant then asked the Henbest boy, five years of age, if he would not come and live with defendant and prosecutrix when they moved down there to that house. Mrs. Henbest saw defendant and prosecutrix in a buggy returning from the marriage of a brother of prosecutrix, in July, 1905, when Mrs. Henbest said, "I would not have been surprised if it would have been you, but I was surprised it was Frank." Defendant said that they came pretty near getting married, but their clothes were not sufficient, but they would be all right by and by. Prosecutrix, her parents and several neighbors testified that during the time she and defendant were going together, prosecutrix kept company with no other young man. The good reputation of prosecutrix as a virtuous woman was established by a number of her neighbors, men as well as women.

The defendant introduced several witnesses, who testified that prosecutrix's general reputation for virtue and chastity was bad; and that her general reputation for truth and veracity was also bad. The defendant also introduced William Glenn as a witness, who testified that some five years previous to the time of testifying he was employed by the father of the prosecutrix to aid him in looking after his stallion and jack that he had upon his premises. This witness testified as to improper and inappropriate conduct on the part of the prosecutrix about the barn in watching the stock that was being looked after by the witness. Miss Lena Cantwell testified that she, Alfred Henbest and prosecutrix were sitting up with Frank Hefley, a brother of prosecutrix, during an illness that occurred some time prior to the alleged engagement; that William Glenn

had also been sitting in the sick room, but had gone to his own bed room, and that prosecutrix then said that she was going to take off her clothes and go and get in bed with William Glenn. One witness for the defendant testified that Tom Van Zandt said that he had been accused of being responsible for the condition of prosecutrix, and if he was accused, he would go back and prove her bad character for the past ten years. This witness also testified that Van Zandt told him that he went to the bed room where prosecutrix was sick, and that she told him that she was pregnant and two months gone. Defendant testified that he was never engaged to be married to prosecutrix at any time. He produced a letter, which he said was delivered to him by William Glenn, and which he said was in the handwriting of prosecutrix. This letter was read in evidence by defendant. Miss Cora Reed, one of defendant's witnesses, also testified that in her opinion this letter was in the handwriting of prosecutrix. The letter above referred to, is as follows:

"Monday evening.

"My dearest one, as I got a letter from Lum Henry to-day I will write you a few lines, they want me to come and stay with them, he said he would give me $2.00 a week if I would, but I don't want to go. Mama and Papa said to do just as I pleased and now I will leave it to you. I would have to go Friday, of course I need the money, as for that, but I don't want to go. I will do just whatever you say, so if you say go I will go, and if you say not I won't go, I would have lots of fun for there is just one kid, she is about 7 years old.

"They have two girl boarders, you know I told you something about going down yonder, I asked Ma this morning and she said she didn't care and she asked Pa and he said if I would help him shock the wheat I could go if I wouldn't stay over three weeks, that don't sound

206 Sup—45

good to me, would it to you? I don't want to go anyway but if I was to go I wouldn't think about staying less than three months. It will take about (18) dollars to take me there and back. He had better give his wheat to some one to get it cut as to pay all of my expenses but I will just stay at home with my little Jim, if you will allow me to call you mine. Oh, Jim I have something to tell you, what Ma said this monring, I will tell you when I see you, it will surprise you when you hear it. I would give $10 if this was Friday or Saturday. I don't see how I am to pass off this week without seeing you. Well I guess I had better get to sewing. I am making me a new calico dress, it is mighty pretty, it looks like some old woman's dress. I will look like Mrs. Smith when I get it on. Well S. H. I will close this foolishness for I guess you are hot and tired. Are you sweating like you did Sunday eve, ha, ha, Bye. bye, sweet one, yours, if you say so.                                "MAYME.

"S. H. I will send this by Charles and Lill if I see them pass and if I don't I will send it by Talbert."

In rebuttal the State proved that defendant's witnesses, William Glenn and Miss Lena Cantwell, had bad reputations for truth and veracity, and that Miss Cantwell's reputation for virtue and chastity was also bad. The State also proved that the general reputation of prosecutrix for truth and veracity, virtue and chastity was good. Prosecutrix and Alfred Henbest testified in rebuttal, and denied that prosecutrix made the statement that she would pull off her clothes and go and get in bed with William Glenn; and prosecutrix denied going to the hay loft and denied seeing William Glenn with the stallion and jack in service. She admitted writing a part of the letter to defendant, but claimed that some words had been changed and others added. Prosecutrix and Tom Van Zandt denied that prosecutrix called him into her bed room and that she told him

she was pregnant and two months gone, and Van Zandt denied that he ever said that he could prove up the bad reputation of prosecutrix for the past ten years.

At the close of the evidence counsel for appellant requested the court to give an instruction in the nature of a demurrer, directing the jury to acquit the defendant, which request was refused by the court, to which action of the court the defendant properly saved timely exceptions. The court then instructed the jury in conformity to its views as to the law applicable to the facts developed. We deem it unnecessary to here reproduce the instructions given by the court, or those requested by the defendant and refused. Errors assigned applicable to the instructions given and those refused will be given proper attention during the course of the opinion. The cause was submitted to the jury upon the evidence adduced and instructions given by the court and they returned a verdict finding defendant guilty as charged and assessed his punishment at two years imprisonment in the penitentiary. Timely motions for new trial and in arrest of judgment were filed and by the court overruled. Sentence and judgment were entered in conformity to the verdict and from this judgment the defendant in due time and proper form prosecuted his appeal to this court and the record is now before us for consideration.

## OPINION.

The record before us in this cause discloses numerous complaints of error as grounds for the reversal of this judgment. We will give such attention to the errors assigned as their importance demands.

## I.

Learned counsel for appellant assail the sufficiency of the information in this cause and insist that the trial court erred in overruling the motion in arrest of

judgment on the ground that the clerk, J. C. Baker, did not use the seal of his office in attesting the affidavit of the prosecuting attorney to the information. It is sufficient to say upon this proposition that in the case of State v. Forsha, 190 Mo. 296, it was expressly ruled that "the omission of the seal of the court to the jurat does not invalidate the verification. The purpose of affixing the seal of the court to the jurat of the clerk is in the nature of an attestation of the genuineness of his signature; but the affixing of the seal is not an indispensable requisite to such jurat." In State v. Pfenninger, 76 Mo. App. loc. cit. 317, it was said by the court: "The judge of a court having a clerk will take judicial notice of the signature of the clerk, and an attestation of such signature by a seal is not indispensable to satisfy the judge of the genuineness of his signature, and when the attention of the judge was called to the signature of the clerk by the motion to quash in this case, it will be presumed, in the absence of any evidence to the contrary, that he inspected the signature of the jurat and saw that it was genuine."

II.

It is insisted by appellant that the court erred in permitting the prosecuting witness to take her baby and exhibit it to the jury while testifying. Upon that question we are unwilling to say that because the mother had her child in the court room when she was testifying would constitute reversible error. The representative of the State did not offer or make profert of the child, and we are unwilling to announce a rule of law which goes to the extent of prohibiting a mother from taking her child into the court room. We are of the opinion that proper deference should be shown the trial court, and the presumption must be indulged that it has exercised proper precaution in the administration of the law, and if in the judgment of the court the mere fact that the prosecutrix had her child with

her at the time of testifying, was not calculated to endanger a fair and impartial trial by the jury, we are unwilling to say that the judgment of the court in this respect was erroneous, and that such action by the mother, in having her child with her, was calculated to prejudice the minds of the jury. The ruling upon this contention must be adverse to the appellant.

### III.

It is insisted that the court committed error in its refusal of instruction numbered 2 requested by defendant. This instruction was as follows:

"The court instructs the jury that when the facts and circumstances such as usually attend an engagement of marriage are relied upon as corroboration, slight and indifferent particulars are not sufficient; nor will proof of attention merely be sufficient, unless from its duration and constancy, and from the acts, conversation and conduct of the parties, it reasonably carries conviction to the mind that an engagement of marriage exists, and that the attention is not merely such as might reasonably be expected without impropriety from a gentleman towards a lady whose society is agreeable and is not merely such as might reasonably be expected between two young people who were having illicit intercourse with each other; and the corroboration of the prosecuting witness as to the promise of marriage, if any, whether direct or positive, or consisting of facts and circumstances as stated above, must be something more than sufficient to overcome the oath of a defendant and the legal presumption of his innocence."

In our opinion there was no error in the refusal of this instruction. The subject of the necessity of corroboration of the prosecutrix in order to warrant a conviction was sufficiently covered by instruction numbered 4, in which the court told the jury that "you cannot find that the promise of marriage was

made by the defendant to the prosecutrix on the testimony of the prosecutrix alone; to warrant you in finding that a promise of marriage was made by the defendant, the testimony of the prosecutrix as to such promise of marriage must be corroborated by other and independent testimony. This corroboration may be by the proof of statements of defendant in relation thereto, if any were made; preparation which the prosecutrix may have made for marriage, if any, or by the continuous courtship for such a period of time as in the course of ordinary affairs an engagement of marriage between the defendant and prosecutrix would be presumed to exist. Such corroboration, of whatever character it may be, must be strong enough, when taken in connection with the testimony of the prosecutrix, to overcome the oath of the defendant and the legal presumption of his innocence." In addition to that instruction, emphasizing the necessity of corroboration of the prosecutrix and the strength of the testimony required, the court in instruction numbered 7, which covered every essential element of the offense with which defendant was charged, told the jury that, "to support the charge of such promise of marriage, it is necessary that the evidence of the prosecutrix be supported by that of the witnesses or by corroboration of acts or circumstances which convince your minds of the truth of the testimony in that respect." While it is true that substantially instruction numbered 2 as requested by the defendant was given by the court in State v. Meals, 184 Mo. l. c. 251, but an examination of that case will demonstrate that the propriety of that instruction was not discussed. The appeal in that case was by the defendant and that instruction was clearly more favorable than the defendant was entitled to; therefore, upon his appeal, he made no complaint as to that instruction. Therefore we take it that the giving of that instruction by the court

and incorporating it in the statement in the appellate court, is by no means to be taken as an instruction that is without objection or as one that met the approval of this court. The court in instruction numbered 4, as given, correctly pointed out as to what corroboration must consist of, and finally very emphatically told the jury that "such corroboration, of whatever character it may be, must be strong enough, when taken in connection with the testimony of the prosecutrix, to overcome the oath of the defendant and the legal presumption of his innocence," with the additional declaration of law, as incorporated in instruction numbered 7, which plainly told the jury that "it was necessary that the evidence of the prosecutrix be supported by that of witnesses or by corroboration of acts or circumstances which would convince the minds of the jury of the truth of the testimony in that respect."

The appellant, in our opinion, has no right to complain that the subject of corroboration of the prosecutrix has not been fully covered, and most favorably so, by the declarations of law as heretofore indicated. While there might be a state of facts testified to in a case of this character which would demand of the court an argumentative instruction similar to instruction numbered 2 requested by the defendant, yet in our opinion the facts in this case, in view of the clear and full presentation of the subject of corroboration by the court in other instructions, did not authorize the court to give instruction numbered 2, or at least it was not reversible error to refuse it.

## IV.

It is contended that the court erred in refusing instruction numbered 3 requested by the defendant. We have carefully read instruction numbered 3 and we deem it unnecessary to reproduce it, as it is simply a direction upon the same subject of corroboration of

the prosecutrix, and what we have said as to the refusal of instruction numbered 2 is equally applicable to the refusal of instruction numbered 3. We simply repeat that the subject of corroboration of the prosecutrix was fully and correctly covered by instructions given by the court.

## V.

It is insisted that the court committed error in its refusal of instruction numbered 5 requested by defendant. That instruction is as follows:

"The court instructs the jury that if they believe from the evidence that the prosecuting witness, Mayme P. Hefley, had sexual intercourse prior to the 30th day of March, 1905, with the defendant or any other person or persons, then you will acquit the defendant, and in this connection you are instructed that it is not necessary to show by direct evidence that the female had illicit intercourse prior to said date, but it may be shown, like all other facts, by circumstances." It is sufficient to say upon this insistence that instruction numbered 5 does not correctly declare the law, and there was no error in the court refusing to give it. This instruction simply asserted the legal proposition, without qualification, that if the prosecutrix at any time prior to March 30, 1905, had sexual intercourse with the defendant or any other person or persons, this entitled the defendant to an acquittal. It was expressly ruled by this court in State v. Sharp, 132 Mo. 165, that there was such a thing as reformation in a female, and this court held that the trial court very properly modified the instructions in that case similar to instruction numbered 5 now under consideration, holding that if the prosecutrix had sexual intercourse with any other person than the defendant prior to the alleged seduction, the defendant was entitled to go acquit, "unless you further find that at

the time of the alleged seduction she was following
the path of virtue and rectitude.'' It was also ruled
in the Sharp case that, after all, the question of para-
mount importance is, was the prosecutrix of good re-
pute at the time of the commission of the alleged of-
fense? and that is ''what the people of her acquaint-
ance generally say of her in this regard; that is, the
general credit for chastity which she bears among her
neighbors and acquaintances.'' [State v. Bryan, 34
Kan. 63.] And an instruction fully recognizing and
embodying that principle was approved by the court
in that case. It therefore follows that instruction num-
bered 5 requested by the appellant, without embrac-
ing the qualification as recognized in the case of State
v. Sharp, supra, did not properly declare the law, and
after all a careful examination of the instructions as
given by the court fully demonstrate that the subject
of instruction numbered 5 requested by defendant was
fully covered by the instructions given. There was
no error in the refusal of instruction numbered 5.

## VI.

It is next very earnestly insisted that the court
committed reversible error in the refusal of instruc-
tions numbered 6, 7, 8 and 9 requsted by the defend-
ant. These instructions practically treated of the same
subject and will be considered together. They were
as follows:

''6. The court instructs the jury that although
you may believe that the defendant had carnal inter-
course with the prosecuting witness, Mayme P. Hefley,
yet, if you further find that she consented to said con-
nection in consideration of a promise, if any, then and
there made to her by defendant that he would marry
her, or if she consented to said intercourse without the
practice by defendant of arts or blandishments upon
said prosecuting witness and she yielded to satisfy her
passions, then you will acquit the defendant.

"7. If the jury find from the evidence that the defendant had illicit connection with the prosecuting witness, Mayme P. Hefley, under promise of marriage, but further find that there was no seduction within the meaning of the word as already defined, then you will find the defendant not guilty.

"8. The court instructs the jury that if you shall find and believe from the evidence in the case that the defendant had carnal intercourse with Mayme P. Hefley, and that she yielded to him on account of the promise of marriage, if any, and without the practice by him of arts or blandishments, then, even though she may have been of good repute, she was not seduced, and the jury should acquit the defendant.

"9. If you shall believe from the evidence that the defendant had carnal intercourse with the said Mayme P. Hefley, and that she yielded to him solely on account of a promise of marriage, without the practice by him of arts and blandishments, then, though she may have been of good repute, she was not seduced, and you must acquit the defendant."

It is sufficient to say of the error complained of in the refusal of the instructions above quoted, that there was no error in the refusal of them for the reason that the subjects treated of in those instructions were fully and fairly presented by instruction numbered 7 given by the court. This instruction so clearly, fully and fairly presented the law of this case that we will be pardoned for here reproducing it. It was as follows:

"7. The court instructs the jury to authorize a conviction in this case, you must believe and find not only that said Mayme P. Hefley was at the time of the seduction, if any, a woman of good repute in the community in which she lived, and that she was then single and unmarried and under twenty-one years of age, and that defendant did in fact seduce her, but

you must believe and find from the evidence in the case that defendant accomplished this under a promise to marry her; that she believed his promise to be in good faith, and that so believing she accepted it and consented to become and by him be made his wife, and that subsequently to such promise, if any, she was seduced and debauched by defendant; and to support the charge of such promise of marriage, it is necessary that the evidence of the prosecutrix be supported by that of the witnesses or by corroboration of acts or circumstances which convince your minds of the truth of the testimony in that respect. A female is said to be debauched within the meaning of that term, as used in this instruction, when, by arts and blandishments, she is deceived, corrupted and drawn aside from the right path. She is said to be 'debauched' within the meaning of that term, as used in the instruction, when she is carnally known. Every illicit connection is not seduction. It cannot be said that a female is drawn aside from the path of virtue unless she is honestly pursuing that path when approached. If her mind is corrupt and polluted by lewd thoughts, and she is ready to submit to improper embraces, as opportunity offers, from her own lustful propensity, and without any arts or blandishments of him with whom she has sexual intercourse, in such case she cannot be said to be seduced by the party with whom she has improper sexual relations. If the jury find from the evidence that the defendant had illicit connection with said Mayme P. Hefley under or by promise of marriage, but further find that there was no seduction within the meaning of the word, as already defined, they will find the defendant not guilty.''

As to this instruction it is sufficient to repeat what this court said in State v. Meals, supra, when discussing a similar instruction in a case of this character, that is, this instruction "expressly requires the jury to find

every essential fact necessary to constitute the offense defined by the statute. It is a clear and full presentation of the law applicable to this case, and meets all the requirements of it, as indicated by the able and exhaustive review by the learned judge in State v. Reeves, 97 Mo. 668.''

## VII.

We have examined the disclosures of the record alleging error assigned in respect to the polling of the jury after the return of the verdict. It is only necessary to say that in our opinion there is no merit in that complaint.

## VIII.

It is urged by counsel for appellant that the court committed error in the exclusion of the testimony offered to prove the defendant's reputation in the neighborhood in which he resided for truth and veracity. This testimony was properly excluded for the reason that the defendant's reputation for truth and veracity had not been assailed, and the mere fact that there was a conflict between his testimony and that of the prosecuting witness, is not in contemplation of law such an attack upon his reputation for truth and veracity as would warrant the court in admitting the testimony as to such reputation, for the purpose of bolstering up the testimony of the defendant, when such reputation had been in no way assailed. As applicable to this proposition we know of no rule of law which makes any distinction between the defendant as a witness and any other witness in the case; therefore we take it that the rule as announced in State v. Thomas, 78 Mo. 327, is decisive of this question.

## IX.

We have fully analyzed and considered instruction numbered 5 and those given by the court, which is made the basis of complaint of error on the part

of the court in giving such instruction. Instruction numbered 5 simply in different language embodies the principle as announced in instructions numbered 4 and 5 given by the court in State v. Sharp, supra. Instruction numbered 6 was simply a precautionary instruction which told the jury that the testimony as to the general reputation of the prosecutrix as to truth and veracity, should only be considered by them in determining what weight should be given to her testimony as a witness, followed by the announcement of the legal presumption that the fact, if proven, that her general reputation for truth and veracity was bad, would be no justification for the defendant in having seduced her, if the jury believe from the evidence that he did seduce her. We are unable to discover any valid legal objection to these instructions and there was no error in giving them.

## X.

This brings us to the final contention of the appellant, that the testimony as introduced was insufficient to authorize a conviction, and that the instruction in the nature of a demurrer to the evidence should have been given by the court as requested by the appellant. It is unnecessary to cite the repeated announcements of the rule by this court that it will not undertake to weigh conflicting testimony developed upon the trial. The witnesses testifying were before the jury; their conduct and manner could be observed, and presumably all the tests as to their credibility were applied. Their testimony was detailed in the presence of the trial judge, and under his supervision, and it is clear to our minds that the trial court and jury are in a far better position to determine the credibilty of the witnesses and the weight to be attached to their testimony than the appellate court, which is confined to the disclosures of a lifeless record embracing the evidence detailed in the case. We have carefully con-

sidered in detail all of the testimony embraced in the voluminous record before us and find that this case is no exception to the general rule that the testimony is conflicting. If the testimony as introduced by the State is true, then in our opinion it furnishes full support to the conclusions reached by the jury. On the other hand, if the testimony as introduced by the defendant is true, there should have been an acquittal. But at last it was the exclusive province of the jury to pass upon the credibility of the witnesses as well as the weight of the testimony, and as has frequently been said by this court, we are unwilling to retry this case upon the facts as disclosed by the record.

We have given expression to our views upon the legal propositions disclosed by the record before us, which results in the conclusion that there was evidence sufficient to support the verdict of the jury, and finding no reversible error in the trial of the case the judgment should be affirmed, and it is so ordered.

All concur.