## THE STATE v. DAVE WALKER, Appellant.

**Division Two, February 7, 1911.**

1. **INSTRUCTION: Seduction: "Good Repute:" Not Defined.** In the trial of a defendant for seduction, under promise of marriage, of a female of good repute under twenty-one years of age, it is not necessary to define the words "good repute." They are not words technical in their meaning, but words well understood and in common use.

2. **NEW TRIAL: Newly Discovered Evidence: No Affidavit of Witness.** The defendant is not entitled to a new trial on the ground of the newly discovered evidence set out in the motion, if the motion is not supported by the affidavit of the witness who, it is alleged therein, would testify to the newly discovered facts upon which a new trial is asked.

3. ———: ———: **Affidavit of Others.** Affidavits filed in which are set out specific acts of misconduct on the part of the prosecutrix, which were not included in the motion for a new trial as newly discovered evidence, cannot be considered by the court in its ruling on the motion.

State v. Walker.

4. **EVIDENCE: Seduction: Letters Before Promise of Marriage.** In a seduction case, the relations of the defendant and prosecutrix, together with all the attendant circumstances, leading up to the promise of marriage and alleged seduction, are always competent evidence on behalf of the State. So that where defendant began to pay his attentions to prosecutrix, as a suitor, and afterwards a disagreement arose, and he ceased his attentions for a period of about six months, and they were then renewed and continued for another period of about six months, during which time they became engaged to be married, and then another disagreement resulted in breaking the engagement, and she went to another town, endearing letters he wrote to her while there were competent evidence, though they were not then engaged to be married, and the letters had ceased before her return to his neighborhood, soon after which they became engaged again and that promise of marriage continued until he accomplished her undoing.

5. **INSTRUCTION: Seduction: Corroboration of Promise to Marry: Preparation.** An instruction telling the jury that prosecutrix's testimony that defendant had promised to marry her before the seduction may be corroborated by "preparation which the prosecutrix may have made for marriage," is not reversible error.

Appeal from Benton Circuit Court.—*Hon. C. A. Denton,* Judge.

AFFIRMED.

*W. S. Jackson, Henry Lay* and *G. W. Barnett* for appellant.

(1) The court erred in refusing to grant the defendant a new trial, for the reason that the law was not properly declared in this case as to what it takes to constitute good repute. The question of paramount importance in a case of this kind is, was the prosecutrix of good repute at the time of the commission of the alleged offense? And the answer is what people of her acquaintance generally say of her in this regard; that is, the general credit for chastity which she bears among her neighbors and acquaintances. State v. Fogg, 206 Mo. 713; State v. Sharpe, 132 Mo. 173; State

v. Bryan, 34 Kan. 63. If the question of good repute is of paramount importance, then it was the duty of the court to explain to the jury what this important matter is. Good repute should have been defined to the jury. They should not have been left to grope in the dark or guess at what was meant. (2) The court erred in refusing to grant a new trial on account of newly discovered evidence furnished in the affidavits of witnesses, which would have not only disproved the allegations in the indictment that the prosecutrix was of good repute, but would have affirmatively established the fact that she was not of good repute. This evidence was not cumulative. No witness in the trial had testified as to any acts of lewd conduct on the part of the prosecutrix. There was no lack of diligence shown in this case. A motion for a new trial is improperly overruled in case of newly discovered evidence of sexual intercourse with other men, previous to the alleged seduction, which was the ground of the motion. Such evidence was clearly admissible, and where the defendant is guilty of no laches, only becoming aware of such evidence after the trial, the motion should be sustained. State v. Wheeler, 94 Mo. 252; State v. Curtis, 77 Mo. 267; State v. Bailey, 94 Mo. 311; State v. Moberly, 121 Mo. 604; State v. Morgan, 96 Mo. App. 343; Meisch v. Sippy, 102 Mo. App. 559. This character of evidence, namely, previous cases of illicit intercourse with other men by prosecutrix, was permissible to negative good repute. State v. Patterson, 88 Mo. 88; State v. Sharpe, 132 Mo. 173. When one of the matters set out in the motion for a new trial is the discovery of new and material evidence that would probably change the result, it is good practice to grant leave to file affidavits in support and counter-affidavits, within a given time, which may be beyond four days. Hesse v. Seyp, 88 Mo. App. 66. (3) The court erred in permitting the State to prove pre-

vious contracts or agreements of marriage between these parties, which had been abandoned and broken off, for the reason that they are too remote and have no connection with the alleged seduction. They could constitute no inducement for the prosecutrix to yield to the solicitations of defendant, but even if it was proper to permit the prosecutrix to testify to the previous abandoned engagements, yet it was highly improper and prejudicial to admit in evidence the long correspondence between the prosecutrix and defendant in the year 1907, while she was at Lamonte, two years prior to the engagement under which the alleged seduction was accomplished, this engagement that existed while prosecutrix was at Lamonte having been long abandoned by mutual consent. (4) The court erred in refusing instruction three, asked by the defendant, to the effect that the prosecutrix's testimony must be strongly corroborated by other testimony, sufficient to overcome that of the defendant and the legal presumption of his innocence. This instruction properly declared the law. State v. Davis, 141 Mo. 525. And this law is not declared in any of the other instructions. (5) The court erred in giving instruction two on behalf of the State, as it improperly singles out specific things, and declares as a matter of law that they constitute corroboration. This instruction points out three things, any one of which in itself, the court says, is sufficient to confirm her testimony, and one is "or by preparation which the prosecutrix may have made for marriage, if any." This instruction does not tell the jury that that preparation for marriage is a circumstance which the jury may consider, along with all the other circumstances tending to corroborate her testimony, but it is only a circumstance to be considered with other circumstances, and it was a palpable error for the court to itemize these various circumstances, and tell the jury that any one of them con-

stitutes a confirmation of the testimony of the prose-
cutrix. Had the jury been told that the prosecutrix's
testimony might be corroborated from facts and cir-
cumstances, including preparations for marriage, it
might not have been so objectionable. But a careful
reading of this instruction will show that it declares
that "the promise must be confirmed, either by direct
evidence as to the promise, or by preparation which
the prosecutrix may have made for marriage, or by
facts and circumstances such as usually attend the
marriage engagement."

*Elliott W. Major,* Attorney-General, and *John M.
Dawson,* Assistant Attorney-General, for the State.

(1) The court committed no error in admitting
all of the evidence of both engagements, as it was
proper for the jury to know all the relations between
the parties and all the facts connected with the promise
of marriage. 11 Cyc. Ev., 694; 12 Current Law, p.
1819. All the relations of the parties are material and
relevant. Armstrong v. People, 70 N. Y. 38. Letters
from the appellant to the complaining witness are ad-
missible. State v. Bell, 79 Ia. 117. The conduct of the
parties prior to the alleged seduction and their rela-
tions to each other are always competent. Underhill
on Crim. Ev., pp. 665, 666; State v. Curran, 51 Ia.
112; Bracken v. State, 111 Ala. 68. The conduct and
relations of the parties are relevant to show that con-
sent was obtained by promise and inducements, and
what they consisted of. (2) The jury may find the
fact of seduction upon the uncorroborated testimony
of the prosecutrix, but the promise of marriage must
be corroborated by proof of circumstances usually at-
tending an engagement of marriage. State v. Brass-
field, 81 Mo. 152; Rice on Crim. Ev., secs. 550, 551.
Circumstantial evidence as to corroborating the prom-
ise is sufficient. Wharton's Crim. Ev., sec. 442. It

is not necessary that the promise should be a valid and binding one between the parties; it is enough that a promise is made which is a consideration for, or inducement to, the act. Rice on Crim. Ev., p. 879, sec. 556; Kenyon v. People, 26 N. Y. 203; Boyce v. People, 55 N. Y. 644. (3)   To corroborate the woman's evidence it may be shown that the demeanor of the parties was that of an engaged couple.   The fact that the woman had made preparations for the celebration of the marriage is relevant.   Underhill on Crim. Ev., sec. 388, p. 666.   The character and intelligence of the woman must be considered.   What might be insufficient to overcome or deceive the mind of a mature and educated woman might succeed in the case of a young and ignorant girl.   Underhill on Crim. Ev., sec. 387, p. 665; State v. Sharp, 132 Mo. 165; People v. Kane, 14 Abb. Pr. (N. Y.) 15; Carter v. State, 79 Ala. 14; Phillips v. State, 108 Ind. 406; Woodward v. State, 5 Ga. App. 447; State v. Stolley, 121 Ia. 111.   There was an abundance of evidence tending to corroborate the prosecutrix to take the case to the jury, whose province it was to pass upon its weight.   State v. Dent, 170 Mo. 406. (4)   Instruction 3, refused, was properly refused because instruction 2, given, properly defined "corroboration."   Where all the propositions of law arising on the facts developed in evidence are covered by the instructions of the court, there is no error in refusing those asked by the appellant, though they may be correct.   State v. Atchley, 186 Mo. 174; State v. Crittenden, 191 Mo. 17; State v. Barrington, 198 Mo. 23. (5) It is within the discretion of the trial court to refuse a new trial on the ground of newly discovered evidence, where such evidence would not change the result upon retrial.   State v. Finn, 199 Mo. 597.   If Carrico did those acts he would have been the only person to testify to it.   It is not in reason for appellant to produce the

kind of hearsay evidence mentioned in the Swerngin affidavits. Where the new evidence would not have changed the result, there is no error in refusing a new trial. State v. Estis, 209 Mo. 288; State v. Speritus, 191 Mo. 24; State v. Church, 199 Mo. 609.

KENNISH, P. J.—The defendant was tried and convicted in the circuit court of Benton county, upon an information charging the offense of the seduction, under promise of marriage, of one Maude C. Yeager, an unmarried female of good repute, under the age of twenty-one years. His punishment was assessed at imprisonment in the penitentiary for a term of two years and, from the judgment pronounced, he appealed to this court.

At the trial, the evidence for the State tended to prove the following facts:

That Maude C. Yeager, the prosecutrix, was an unmarried female of good repute, under twenty-one years of age, and that she had resided in Benton county since her infancy; that when she was of tender years her mother died, and she was brought up by her relatives, having made her permanent home with her half-sister after she was ten years of age.

She had known the defendant, who was about eight years her senior, since childhood. In the year 1905 the defendant began waiting on her, as a suitor, and in the year 1906 they became engaged to be married. This engagement, because of a disagreement, was broken, and in January, 1907, the prosecutrix went to the town of Lamonte, not far distant from her home, where she was employed as a domestic. She remained there the most of the time for about two years. While at Lamonte the defendant corresponded with her, and his letters, couched in the most endearing terms, were introduced in evidence. Because of a second disagreement, the correspondence was discontinued. The pros-

ecutrix returned to her home at the town of Edmunson in July, 1908, and thereupon the defendant resumed his attentions to her.

On the night of the 15th of February, 1909, the prosecutrix attended a masked ball, in the company of another young man who had been paying her some attention since her return from Lamonte. The defendant was present at the ball and requested a private talk with the prosecutrix, during which he told her of his intentions to get married, and of his love for her. The prosecutrix then promised to cease keeping company with the young man with whom she had attended the ball that evening and, from that time on, she kept company regularly with the defendant, and with no other suitor. The defendant thereafter constantly waited upon her, calling at her home two or three times a week, and taking her to public gatherings, as is usual in such cases, until July 3, 1909.

On Sunday night, April 4, 1909, while calling upon the prosecutrix at her home, the defendant promised to marry her, and the promise was accepted. Thereafter, on the 18th day of April, 1909, under the promise of marriage theretofore made, and at defendant's solicitations, the prosecutrix yielded to him, and as a result of the intercourse which followed she became pregnant, of which fact she informed the defendant about the first of July following.

On the third day of July the defendant took her to the town of Cole Camp, near by, where she had secured employment. When she informed the defendant of her condition, she urged the necessity of their early marriage, and he said he would begin to build a house the next week, and that she need not "worry about that at all." While at Cole Camp, not hearing from the defendant, she wrote several times and sought to communicate with him by telephone, but failed to reach him or receive any response to her letters. On the thir-

teenth day of August, 1909, the defendant married another woman.

The prosecutrix testified that she had made preparation to get married, such as buying some furniture, and in this she was corroborated by other testimony.

The defendant was a witness in his own behalf, and denied that he had ever promised to marry the prosecuting witness. Evidence was also introduced tending to prove that the prosecuting witness was not of good repute, and that she was over twenty-one years of age at the time of the alleged offense.

I. Error is assigned in the failure of the court to give an instruction to the jury defining "good repute," as an element of the offense charged.

A separate instruction was not given on the subject of good repute, neither was such an instruction asked by the defendant. In the general instruction numbered 1, given by the court of its own motion, the jury were instructed that to authorize a conviction, they must believe and find "that Maude C. Yeager was, at the time of the seduction, if any, a woman of good repute in the community in which she lived and among those who knew her."

The good repute of the prosecutrix is clearly an essential element of the crime charged in this case; an element necessary to be found by the jury before they were authorized to return a verdict of guilty against the defendant. It is provided by section 5231, Revised Statutes 1909, that: "The court must instruct the jury in writing upon all questions of law arising in the case which are necessary for their information in giving their verdict."

It will be observed that the statute requires instructions only upon such questions of law arising in the case as are necessary for the information of the jury.

State v. Walker.

The words, "good repute," as used in the evidence, and as set forth in instruction numbered 1, as an element of the offense charged, could not have been misunderstood by the jury. Witnesses on the one side testified that the reputation of the prosecutrix for virtue and chastity was good, while those on the other side said it was bad. These words are not technical in their meaning, but are words well understood and in common use. The rule applicable in such cases, as concisely stated in the thirteenth syllabus of the case of State v. Sattley, 131 Mo. 464, is: "Ordinary plain English words used in instructions are not required to be defined." [See, also, State v. Gregory, 170 Mo. 598; 12 Cyc. 613.]

As to the issue of the good repute of the prosecutrix, instruction numbered 1 in this case is identical with an instruction given in the case of State v. Meals, 184 Mo. 244, and this court, speaking of the instruction in that case, l. c. 256, said that it "carefully, fully and expressly requires the jury to find every essential fact necessary to constitute the offense defined by the statute." The same instruction given in the Meals case is referred to with approval by this court in the later case of State v. Fogg, 206 Mo. l. c. 715. The prosecutions in both the Meals and Fogg cases were under the same statute upon which the information was based in the case before us.

We, therefore, hold that appellant's first assignment of error is without merit.

II. It is urged that the court erred in refusing to grant a new trial on the ground of newly-discovered evidence.

This complaint is based upon the eighth ground of the motion for a new trial, in which it is alleged that the prosecutrix, prior to the date of the offense charged, was guilty of specific acts of unchastity with one John Carrico, at the town of Lamonte. It is fur-

ther alleged that the defendant was unable to obtain the affidavit of the said Carrico in time to be filed with the motion for a new trial, but that defendant believed he could procure such affidavit of the said Carrico to the facts stated, in time to be filed in support of the motion at the March term, 1910, of that court.

The cause was continued upon the motion for a new trial until the March term, but the defendant failed to file the affidavit of Carrico in support of the alleged newly-discovered evidence.

Affidavits were filed in which the affiants purported to state what Carrico had said to them relative to the alleged misconduct of the prosecutrix with him, and other affidavits were filed as to specific acts of misconduct by the prosecutrix, which were not included as newly-discovered evidence in the motion for a new trial. It is needless to discuss the affidavits last mentioned, for the reason that if the facts contained therein were not included in the motion for a new trial, then manifestly the affidavits could not be considered by the court in its ruling upon the motion.

The defendant was not entitled to a new trial on the ground of the newly-discovered evidence set out in the motion, because the motion was not supported by the affidavit of the witness Carrico, who it was alleged would testify to the newly-discovered facts upon which a new trial was asked.

In the case of State v. McCollough, 171 Mo. l. c. 575, this court said: "The contention that is most earnestly urged, is the error of the court in refusing to grant a new trial upon the [ground of] newly-discovered evidence. As to this contention, the motion for a new trial is only supported by the affidavit of the defendant. It fails in an essential particular to conform with the long and well-settled rule announced by this court, in this, that the affidavits of the witnesses who it is alleged will testify to the newly-discovered

facts. must 'accompany the motion for a new trial.' "
[State v. Bowman, 161 Mo. 1. c. 94.] .

III.  It is disclosed by the evidence that defendant
began paying his attentions to the prosecutrix, as a
suitor, in 1905.  That after going with her for about
six months, a disagreement caused him to cease his
attentions to her for about an equal period.  That he
then resumed his attentions for about six months,
during which time they became engaged to be married.
That soon thereafter another disagreement resulted in
breaking the engagement and another  cessation of
their association, until January, 1907.  At the date
last mentioned, prosecutrix went to Lamonte, about
fifty miles distant, at which place she had secured em-
ployment, and for about six months thereafter the de-
fendant corresponded with her, writing letters which
would lead her to believe that he 'entertained a deep
affection for her.  These letters did not, in any man-
ner, refer to a promise of marriage.  They were in-
troduced in evidence at the trial, over the objection
of the defendant, and the ruling of the court, in so ad-
mitting them, is assigned as error.

From this statement it appears that at the time
of this correspondence no engagement existed, and al-
though the correspondence had ceased for some time
before the prosecutrix returned to her home, the de-
fendant, immediately upon her return, renewed his at-
tentions to her and, shortly thereafter, his promise of
marriage, under which he accomplished her undoing.

It is the recognized law, in seduction cases, that
the relations of the defendant and the prosecutrix, to-
gether with all the attending circumstances leading up
to the promise of marriage and alleged seduction, are
always competent evidence on behalf of the State.  We
know of no principle of law, nor has our attention
been called to any authority, which renders these com-
munciations by which the defendant sought to win the

heart and love of the prosecutrix, inadmissible against him on a trial for seduction. His attentions to her before she went to Lamonte were admitted without objection. Why were not the letters admissible for the same reason? We think they were admissible and that the court properly so ruled. [Faulkner v. State, 109 S. W. (Tex.) 199.]

A case of the character of that now before us is not to be disposed of on the principles of law applicable to the rights of parties to an ordinary contract, such as an abandonment by mutual consent, or the merger of all antecedent negotiations into the terms of the contract. The abiding character of the love and confidence implied in an engagement of marriage is a fact which is fundamental in human nature and which does not readily yield to disagreements or even broken engagements, a fact of which the defendant in this case was well aware and quick to take advantage.

IV. Appellant's fourth and fifth assignments of error may properly be treated together. In the fourth assignment, complaint is made of the ruling of the court in refusing to give appellant's instruction upon the subject of the corroboration of the evidence of the prosecutrix, required by law, as to the promise of marriage, and the fifth assignment is based upon alleged error in the giving of instruction numbered 2 by the court, of its own motion, upon the same subject.

If instruction numbered 2 is a correct declaration of the law upon the subject of the necessary corroboration of the prosecutrix, then it is well settled that the court was not in error in refusing an instruction, upon the same subject, asked by the defendant. [State v. Fogg, 206 Mo. 696; State v. Sassaman, 214 Mo. 695; State v. Wooley, 215 Mo. 620.]

It is not necessary to set out the whole of said instruction numbered 2. The part of which complaint is made is the following: "The jury are further in-

structed that they cannot find that there was a promise of marriage upon the evidence of Maude Yeager alone; but under the law her evidence as to the promise of marriage must be corroborated; that is, confirmed, either by direct and positive evidence, as to the promise of marriage, or by preparation which the prosecutrix may have made for marriage, if any, or by facts and circumstances which usually attend the engagement of marriage." The particular clause in that part of the instruction quoted, of which appellant specifically complains, is "or by preparation which the prosecutrix may have made for marriage, if any." It is contended that if the corroboration in the clause complained of be sufficient under the statute, then it is always within the power of the prosecutrix, by self-serving acts, to supply the necessary corroboration of her own testimony as to the promise of marriage.

In the recent case of State v. Fogg, 206 Mo. 696, a case cited by appellant, this court had under consideration, as in the case at bar, a complaint of the appellant that the court erred in failing to give an instruction, at the request of the defendant, upon the subject of the corroboration of the prosecutrix, necessary under the law, as to the promise of marriage. Passing upon the question thus before it, this court, at page 709, said: "In our opinion there was no error in the refusal of this instruction. The subject of the necessity of corroboration of the prosecutrix in order to warrant a conviction was sufficiently covered by instruction numbered 4, in which the court told the jury that 'you cannot find that the promise of marriage was made by the defendant to the prosecutrix on the testimony of the prosecutrix alone; to warrant you in finding that a promise of marriage was made by the defendant, the testimony of the prosecutrix as to such promise of marriage must be corroborated by other and independent testimony. This corroboration may be by the

proof of statements of defendant in relation thereto, if any were made; preparation which the prosecutrix may have made for marriage, if any, or by the continuous courtship for such a period of time as in the course of ordinary affairs an engagement of marriage between the defendant and prosecutrix would be presumed to exist.' '' The court further calls attention in that case to the fact that another instruction told the jury that, "to support the charge of such promise of marriage, it is necessary that the evidence of the prosecutrix be supported by that of the witnesses or by corroboration of acts or circumstances which convince your minds of the truth of the testimony in that respect." It will be found that instruction numbered 1, in the case in hand, contains a counterpart of that referred to by the court in the Fogg case, as being a part of instruction numbered 7.

As this court has thus so recently passed upon and approved an instruction, of which the instruction in this case, upon the point under consideration, is an exact copy, we are not disposed to enter upon a discussion as to whether or not it is theoretically a correct exposition of the law upon the subject of the corroboration of the prosecutrix.

Finding no prejudicial error in the record, the judgment should be affirmed. It is so ordered. *Ferriss, J.*, concurs; *Brown, J.*, concurs in the result.